**UNITED STATES of America,
Plaintiff,**

v.

**Karim KOUBRITI, Ahmed Hannan,
Abdel–Ilah Elmardoudi,
Defendants.**

No. 01–CR–80778.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 2, 2004.

Craig S. Morford, Cleveland, OH, for Plaintiff.

Federal Defender, Detroit, MI, Stephen T. Rabaut, St. Clair Shores, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING THE GOVERNMENT'S AND DEFENDANTS' POST–TRIAL MOTIONS

ROSEN, District Judge.

This Nation's war on terrorism has as its natural and inevitable adjunct the prosecution in the courts of those charged with terrorist activities. It is also inevitable that such cases will bring with them challenges to those who work in the judicial system which at times will place us in uncharted legal and constitutional waters. It should, then, not be surprising that this case—the first prosecuted and tried in the aftermath of September 11th—has in its post-trial phase presented the Court and counsel with a confounding maze of complicated and interrelated issues arising out of the original prosecution team's conduct of the case.

■ Yet, this case, like all others, is governed by the same core constitutional principles that have withstood countless tests throughout our Nation's history. One such principle, which has featured centrally in the post-trial phase of this case, is the due process mandate that the prosecutor must disclose to the defense all evidence which is "favorable to [the] accused" and "material either to guilt or to punishment." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).[1] In their post-trial motions, as throughout the trial, the Defendants charged that the Government had not fully met their obligations under *Brady* and *Giglio.* They further, and more

---

1. In *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court extended the dictates of *Brady* to encompass evidence impeaching the credibility of witnesses.

seriously, charged that the prosecution had engaged in a pattern of misconduct.

Such challenges are not altogether unusual, of course, particularly in the tense atmosphere of a high-profile case. The Defendants' allegations of prosecutorial misconduct, however, were given some credence by the discovery post-trial of at least one document that was intentionally not disclosed but unquestionably should have been—a point candidly acknowledged at a December 12, 2003 hearing by the head of the Criminal Division of the U.S. Attorney's Office in Detroit. In light of the testimony at this hearing, the Court ordered the Government to conduct a thorough review of the case, including all documents, both classified and non-classified, in the Government's possession having any connection whatsoever with the case. The primary purpose of this Order was to allow the Court to make a comprehensively supported determination as to whether, in fact, the Defendants' fair trial, confrontation and/or due process rights had been violated by either the intentional or inadvertent withholding of material exculpatory information.

The Court followed this Order with another directing those Government counsel responsible for conducting the investigation to periodically report upon their progress to the Court and to turn over to the Court all relevant documents. As this review developed, and its scope exceeded that which the Court and no doubt Government counsel anticipated, the United States Attorney General, to his credit, appointed a Special Attorney, Craig S. Morford, from outside the Detroit U.S. Attorney's office to lead the Government's review.

As matters progressed further, other developments arising out of the case inter-

vened which made the review more complicated by presenting issues of overlapping concern and potentially conflicting objectives.[2] This had the unfortunate by-product of delaying the resolution of the principal issues raised in the Defendants' post-trial motions.

It is a fair statement that at the inception of this review no one, least of all the Court, could have anticipated the nature and scope of the issues—not to mention the sheer number of documents—that would ultimately be involved in this investigation. (Just one complicating factor, for example, was the necessity for the Court to review many classified documents and for the Court to seek security clearance for its staff and defense counsel, a time consuming process.) Certainly, no one could have imagined last winter that it would be almost autumn before the review was completed and a resolution at hand.

The Government's filing this week—confessing error, moving to dismiss the terrorism related charges in Count I, and acquiescing in a new trial as to the document fraud charges in Count II—brings to the point of resolution the vast majority of the outstanding issues raised in the Defendants' motions. It remains now only for the Court to put its imprimatur upon this resolution, at least as to those issues that are no longer in contest, before moving on to the next phase of this case.

Before doing so, the Court offers several observations about the case and its post-trial proceedings. First, from the inception of its review, it has been the Court's intention to conduct as thorough and comprehensive a review as possible and to examine all evidence, documents and concomitant issues presented to it before making a determination of the Defendants'

---

**2.** These intervening events included internal Justice Department investigations by the Office of Professional Responsibility and the Office of Professional Integrity into the conduct of the original prosecution team.

motions. The Court believed then, and believes now, that jury verdicts reached after painstaking consideration of the evidence at trial and thorough deliberation should not be precipitously disregarded and overturned. Rather, jury verdicts should be disturbed only upon a court's firmest conviction and belief—formed after the most searching and comprehensive review of all of the evidence and issues—that a miscarriage of justice has occurred and a defendant's fundamental constitutional rights violated.

The Court is satisfied that this searching and comprehensive review has now been completed. Beyond the material provided directly to the Court by Government counsel in response to the review Order, the Court itself has conducted a personal review of all classified information in the possession of the Central Intelligence Agency concerning this case. In addition, the Court has, of course, thoroughly reviewed and considered the Government's filing.

This brings the Court to its second observation. The Court would be remiss if it did not commend both Government and defense counsel, and express its appreciation, for their work and conduct during the post-trial review process. Both the Government team pursuing the review, led by Mr. Morford, and all defense counsel have conducted themselves throughout this difficult process with the highest level of professionalism and commitment to the justice system, and all counsel have at all times thoroughly cooperated with the Court.

With respect to the Government team, in vigorously pursuing and producing to the Court all possible evidence, and helping to develop a complete record upon which a decision could be made, Government counsel has followed the evidence impartially and objectively and allowed the facts to lead where they may. The Court recognizes the initial impulse, under the circumstances presented here, to find fault with a system that allowed the mistakes now acknowledged by the Government— and, to be sure, the Defendants' due process rights have been compromised as a result of these errors. Nonetheless, any such criticism must be considerably tempered by the Government team's post-trial commitment to uncover all of the evidence and carefully assess whether, in fact, the Defendants were denied their right to a fair trial.[3]

In the Court's view, the position the Government has now taken—confessing prosecutorial error and acquiescing in most of the relief sought by the Defendants—is not only the legally and ethically correct decision, it is in the highest and best tradition of Department of Justice attorneys. Given the nature and background of this case, the Government's decision could not have been an easy one and, no doubt, is one that will come in for criticism and second-guessing from some quarters. However, it is the right decision.

With respect to defense counsel, they, too, have conducted themselves professionally. As matters became more complicated and protracted during the review, and it

---

3. Indeed, it bears emphasis that the court-ordered review in this case was directly attributable to the efforts of Government lawyers at the U.S. Attorney's Office in Detroit, who brought evidence to the attention of defense counsel and the Court that resulted in the December 12, 2003 hearing. Further, it was the forthright statements of Government attorneys at this hearing which confirmed the

Court's belief that a comprehensive review was necessary. Thus, it would be simply wrong to claim that the prosecution's transgressions came to light purely as a matter of "chance." This view would do a disservice to the system of checks and balances that safeguards the fair trial rights of defendants, and to the countless Government attorneys who are committed to the principles of justice.

became clear it would not be possible for the Court to reach an early resolution, defense counsel exhibited admirable patience and restraint, thereby allowing the review to continue without undue distraction, while at the same time always keeping their clients' interests at the forefront of the Court's consideration and awareness. The Court understands that at times this took some faith on the part of defense counsel in the Court and the integrity of the review process, and for that the Court is appreciative. More generally, defense counsel's persistence, perseverance and tenacious commitment to their clients' cause has, to a great extent, brought matters to where they are today. Their work has been in the highest and best tradition of appointed counsel and the legal profession, and the American justice system.

Finally, this case—and all of the issues that have been raised by it—has always stood against the backdrop of the September 11 attacks upon our Nation and in the continuing shadow of the threat of future terrorist attacks. It is no exaggeration to say that this monstrous apparition of fanatical terrorism presents to our Nation—indeed, to the whole civilized world—the gravest threat of the first decade of the new Millennium. In the first instance, of course, this threat to our security and way of life must be addressed by those in the policy branches of government. But, we are a nation that defines itself by laws, and as we are seeing in courts across the country, many of the actions taken by the Executive and Legislative branches to protect us will invariably end up before the courts for testing against the substantive and procedural protections of our Constitution.

For those of us who work in our Nation's courts and whose responsibility is the administration of justice—including not only judges, but prosecutors and defense lawyers—perhaps our greatest chal-

lenge will be to insure that this new threat is confronted in a way that preserves our most fundamental and cherished civil liberties. Certainly, the legal front of the war on terrorism is a battle that must be fought and won in the courts, but it must be won in accordance with the rule of law. Those of us in the justice system, including those prosecuting terror suspects, must be ever vigilant to insure that neither the heinousness of the terrorists' mission nor the intense public emotion, fear and revulsion that their grizzly work produces, diminishes in the least the core protections provided criminal defendants by our Constitution. To permit anything less—to allow our constitutional standards to be tailored to the moment—would be to give the terrorists an important victory in their campaign to bring us down because they will have caused us to become something less than what we are—a nation of laws based upon constitutional foundations developed over more than two centuries of jurisprudential evolution.

In the end, it is always at the most difficult and anxious moments in the life of our Nation—and this is certainly one of those periods—that our commitment to our constitutional values and traditions is most strenuously tested. Although prosecutors and others entrusted with safeguarding us through the legal system clearly must be innovative and think outside the conventional envelope in enforcing the law and prosecuting terrorists, they must not act outside the Constitution.

■ Unfortunately, that is precisely what has occurred in the course of this case. As thoroughly detailed in the Government's filing, at critical junctures and on critical issues essential to a fair determination by the jury of the issues tried in this case, the prosecution failed in its obligation to turn over to the defense, or to the Court, many documents and other information, both classified and non-classi-

fied, which were clearly and materially exculpatory of the Defendants as to the charges against them. Further, as the Government's filing also makes abundantly clear, the prosecution materially misled the Court, the jury and the defense as to the nature, character and complexion of critical evidence that provided important foundations for the prosecution's case.

As the Government's filing also makes clear, these failures by the prosecution were not sporadic or isolated. Rather, they were of such a magnitude, and were so prevalent and pervasive as to constitute a pattern of conduct, that when all of the withheld evidence is viewed collectively, it is an inescapable conclusion that the Defendants' due process, confrontation and fair trial rights were violated and that the jury's verdict was infected to the point that the Court believes there is at least a reasonable probability that the jury's verdict would have been different had constitutional standards been met.

Given the investment of the Government's time and resources—not to mention the Court's—and the significance of this case, one might well ask why and how this happened. This Court probably does not have sufficient training in the field of psychology and motivation to render an educated judgment, and it makes no final assessment here as to the legal or ethical culpability of the prosecution in this case.[4] However, it is sufficient to say here that two things are obvious to the Court from both its review of the Government's filing, as well as its own independent review of all the documents and evidence presented to it. First, the prosecution early on in the case developed and became invested in a view of the case and the Defendants' culpability and role as to the terrorism charges, and then simply ignored or avoided any evidence or information which contradicted or undermined that view. In doing so, the prosecution abandoned any objectivity or impartiality that any professional prosecutor must bring to his work. It is an axiom that a prosecutor must maintain sufficient distance from his case such that he may pursue and weigh all of the evidence, no matter where it may lead, and then let the facts guide him. That simply did not happen here.

More broadly, when viewed against the backdrop of the September 11 attacks upon our Nation and the public emotion and anxiety that has ensued, the prosecution's understandable sense of mission and its zeal to obtain a conviction overcame not only its professional judgment, but its broader obligations to the justice system and the rule of law.

Normally, in a matter as consequential as this, the Court would write a detailed opinion and lengthy analysis of the law and how it lays out against the evidence, followed by its legal conclusions directed by this analysis. However, that is not necessary here. The Government's comprehensive and thorough filing amply provides the evidentiary and legal analysis necessary to support the Court's ruling. Suffice it to say that the Court's own involvement in the review, which has been ongoing, intensive and exhaustive and has included a thorough review of all documents and information not provided to the defense, both classified and non-classified, fully supports the Government's conclusions and position.[5] In short, the Court finds it un-

---

4. As noted above, there are ongoing investigations being conducted as to such matters, and the Court has no desire or intent to interfere with or influence the course or outcome of those investigations.

5. Indeed, the Government has acknowledged that its submission does not address the full extent to which the prosecution failed to meet its obligations to the Defendants and the Court. This public filing, in particular, does not address any classified materials that

necessary to provide further explication for its decision—at this point, it is enough that the Government has confessed error, agrees to dismiss Count I, and concurs with the Defendants' motion for a new trial as to the charges in Count II.

This brings to a conclusion this very troubled and troubling phase of this case. The Court will leave to another day for resolution any residual issues upon which the parties may not be in agreement.

### ORDER

For the reasons set forth here and for the reasons set forth in the Government's filing,

IT IS HEREBY ORDERED that the Government's Motion to Dismiss, without prejudice, Count I of the Third Superseding Indictment is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for New Trial is GRANTED, in part.

Count I of the Third Superseding Indictment, accordingly, is DISMISSED, without prejudice, and a NEW TRIAL is hereby ordered as to the charges in Count II.

might have been subject to disclosure under *Brady* and *Giglio*. Having itself reviewed these classified materials, the Court observes that they provide additional and substantial support for the conclusions reached in the Government's filing.