# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 12, 2012         Decided June 22, 2012

No. 11-5133

RICHARD G. CONVERTINO,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE
AND JONATHAN TUKEL,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-00236)

———

*Stephen M. Kohn* argued the cause for the appellant. *David K. Colapinto* entered an appearance.

*Samantha L. Chaifetz*, Attorney, United States Department of Justice, argued the cause for the appellees. *Tony West*, Assistant Attorney General, *Ronald C. Machen Jr.*, United States Attorney, *Beth S. Brinkmann*, Deputy Assistant Attorney General, and *Mark B. Stern*, Attorney, were on brief. *R. Craig Lawrence*, Assistant United States Attorney, entered an appearance.

Before: HENDERSON, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Richard Convertino (Convertino) appeals the district court's order granting summary judgment to the United States Department of Justice (DOJ) and denying Convertino's cross-motion to stay the court's summary judgment ruling to allow for further discovery under Rule 56(f) of the Federal Rules of Civil Procedure (FRCP).[1] As we explain below, we reverse and remand the district court's summary judgment.

## I.

Six days after the September 11, 2001 terrorist attacks, members of the Detroit Joint Terrorism Task Force[2] wanted to interview Nabil Al-Marabh, whose name was included on the Federal Bureau of Investigation (FBI) suspected terrorist "watch list." Their investigation took them to a location they thought was Al-Marabh's residence but, instead of Al-Marabh, the Task Force found three other men—Ahmed Hannan, Farouk Ali-Haimoud and Karim Koubriti—living in the apartment "as apparent transients with little or no furniture." *Convertino v. U.S. Dep't of Justice*, 769 F. Supp. 2d 139, 141 (D.D.C. 2011) (quotation marks omitted).[3] A

---

[1]  In 2010, Rule 56(f) became Rule 56(d) of the FRCP. Following the parties' briefs and the district court opinion, we refer to former Rule 56(f).

[2]  The Task Force included, *inter alia*, members of the FBI, the U.S. Bureau of Alcohol, Tobacco and Firearms, the U.S. Immigration and Naturalization Service, the U.S. Drug Enforcement Administration, the U.S. Internal Revenue Service and the U.S. Customs Service. *See United States v. Koubriti*, 199 F. Supp. 2d 656, 659 n.3 (E.D. Mich. 2002).

[3]  The undisputed facts are set forth primarily in the district court's order on appeal. *See Convertino*, 769 F. Supp. 2d at 141-44.

subsequent search revealed false identity documents for all three men. The men were arrested and charged with possession of false documents in violation of 18 U.S.C. §§ 1028(a)(4), 1546 and 371. Assistant United States Attorney Convertino was named to lead the prosecution.

While the case began as a fraudulent documents prosecution, it quickly escalated into a highly-publicized terrorism trial—the first since the September 11 attacks. Convertino became convinced that Hannan, Ali-Haimoud and Koubriti—plus a fourth man, Abdel Ilah El Mardoudi—were members of a "sleeper cell" of an international Islamic terrorist organization. He filed superseding indictments adding El Mardoudi as a codefendant and charging each defendant with one count of conspiracy to provide "material support or resources" to "terrorists" in violation of 18 U.S.C. §§ 2339A and 371 and one count of conspiracy to commit document fraud in violation of 18 U.S.C. §§ 1028(f), 1546 and 371. In June 2003, after a trial lasting three months, the jury convicted three of the four Detroit Sleeper Cell defendants of at least one count.[4]

Convertino's successful prosecution was short-lived. In the fall of 2003, the United States Attorney for the Eastern District of Michigan removed Convertino from the case (while the defendants' sentencing was pending) for alleged ethical violations committed during the prosecution. Soon thereafter, the three convicted defendants moved for a new trial on the ground that they had been denied due process by the prosecution's withholding of evidence that should have

---

[4]    Koubriti and El Mardoudi were convicted of the two conspiracy counts. *See Koubriti v. Convertino*, 593 F.3d 459, 463 n.7 (6th Cir. 2010). Hannan was convicted of document fraud only. *Id.* Ali-Haimoud was acquitted of all charges. *Id.*

been disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963),[5] and *Giglio v. United States*, 405 U.S. 150 (1972).[6] A subsequent court-ordered investigation "disclosed numerous additional documents that had not previously been submitted or shown to . . . the . . . defendants." *Koubriti*, 593 F.3d at 463. Eventually, in September 2004, the trial court vacated the defendants' convictions and granted a new trial on the document fraud counts. *See United States v. Koubriti*, 336 F. Supp. 2d 676 (E.D. Mich. 2004).

In the meantime, Convertino's alleged prosecutorial misconduct led to his referral to DOJ's Office of Professional Responsibility (OPR), which began an internal investigation into whether Convertino knowingly withheld evidence from the defense. News of Convertino's OPR referral eventually found its way into the hands of a reporter who, on January 17, 2004, published a front-page article in the *Detroit Free Press* (Free Press) entitled *Terror Case Prosecutor is Probed on Conduct*. David Ashenfelter, *Terror Case Prosecutor is Probed on Conduct*, DETROIT FREE PRESS, Jan. 17, 2004, at A1. The article included details of the OPR referral, which details it traced to "Department officials" "who spoke on condition of anonymity, fearing repercussions." *Id.*[7] DOJ's Office of Inspector General (OIG) subsequently began an investigation into the source of the leaked information. *See*

---

[5]    In *Brady*, the United States Supreme Court held that due process requires a prosecutor to disclose all evidence "favorable to [the] accused" and "material either to guilt or to punishment." 373 U.S. at 87.

[6]    In *Giglio*, the Court held that the prosecution's *Brady* obligation includes impeachment evidence. 405 U.S. at 154.

[7]    The reporter later confirmed that his source was an unnamed DOJ employee. Ashenfelter Decl. at 1, *Convertino*, No. 07-cv-13842 (E.D. Mich. Mar. 26, 2008).

*Convertino*, 769 F. Supp. 2d at 142. Ultimately, however, the OIG was unable to pinpoint the leak. *Id.*[8]

On February 14, 2004, Convertino brought suit in the district court here, alleging that an unidentified DOJ employee willfully or intentionally disclosed "confidential Privacy Act-protected information" to the reporter. Complaint at 33, *Convertino*, No. 1:04-cv-00236 (D.D.C. Feb. 13, 2004).[9] Discovery commenced in the spring of 2006 and was both slow and litigious. On April 30, 2007 and May 2, 2007, Convertino obtained subpoenas duces tecum from the United States District Court for the Eastern District of Michigan (Eastern District) and served them on both the Free Press reporter and the Free Press. *See Convertino*, No. 2:07-cv-13842, 2007 WL 2782039, at *1 (E.D. Mich. Sept. 24, 2007). The subpoenas required "[the reporter] to appear for [a] deposition concerning the identity of the source(s) for the Free Press Article, and to produce any and all related documents in his possession or control, and commanded the Free Press to designate a corporate representative to do the

---

[8] The OIG focused its investigation on "approximately [thirty] DOJ employees" who, it believed, had access to the confidential material referenced in the newspaper article. *Convertino*, 769 F. Supp. 2d at 142 (quotation marks and citation omitted).

[9] Convertino's complaint included claims against the Attorney General and various individual DOJ employees, alleging violations of the Privacy Act, 5 U.S.C. §§ 552a *et seq.*, the First Amendment, the Administrative Procedure Act, 5 U.S.C. §§ 704 *et seq.*, and the Lloyd-LaFollette Act, 5 U.S.C. § 7211. *See generally* Complaint, *Convertino*, No. 1:04-cv-00236 (D.D.C. Feb. 14, 2004). In October 2005, the district court dismissed all of Convertino's claims except his Privacy Act claim against DOJ, *see Convertino v. U.S. Dep't of Justice*, 393 F. Supp. 2d 42 (D.D.C. 2005), which is the only claim before us.

same." *Id.* (quotation marks omitted). Neither party complied. Convertino then moved in the Eastern District to compel their compliance. *See* Plaintiff's Mot. to Compel Ashenfelter and the Free Press, *Convertino*, No. 2:07-cv-13842 (E.D. Mich. July 6, 2007).

On August 28, 2008, the Eastern District granted Convertino's motion to compel discovery from the reporter, noting that identification of the reporter's source was vital to Convertino's Privacy Act claim. *See Convertino*, No. 2:07-cv-13842, 2008 WL 4104347, at *7 (E.D. Mich. Aug. 28, 2008) ("As Convertino's claim depends on his ability to question [the reporter's] sources, their identifies [*sic*] are undoubtedly relevant . . . ."). The court denied his motion to compel the Free Press, however, on the ground that discovery from it would be "duplicative." *Id.* at *9, 10 ("Convertino's best chance of learning the identity of Ashenfelter's sources is deposing Ashenfelter himself, and [] an additional subpoena of the Free Press is unlikely to produce more information than that uncovered in a deposition of Ashenfelter . . . ."). Its denial was without prejudice and, importantly, it noted that it might reconsider its decision if, for example, the reporter was unable to comply with the court's order. *Id.* at *10 n.17 ("Contingent upon, for example, evidence of non-compliance with this order through impossibility, it may be appropriate to revisit the court's analysis as to the discovery obligations of the Free Press.").

On December 8, 2008, the reporter attended his deposition but, invoking his Fifth Amendment privilege against self-incrimination, refused to answer substantive questions. *Convertino*, 769 F. Supp. 2d at 143. Convertino promptly applied for a contempt of court citation and sanctions in the Eastern District. *Id.* at 144. That court denied the motions but ordered the reporter to appear at a second deposition to be held at the federal courthouse in Detroit. *Id.*

There, the reporter once again invoked his Fifth Amendment privilege and refused to answer questions regarding his source. *Id.* The Eastern District then conducted an *ex parte*, *in camera* hearing with the reporter and his counsel, ultimately upholding his Fifth Amendment privilege. *Id.* Convertino moved for reconsideration on the "ground[] that [the reporter] waived any Fifth Amendment privilege he had as to the identity of his source(s)." Supplemental Br. in Supp. of Arg. that Ashenfelter Waived Any Fifth Amend. Privilege at 1, *Convertino*, No. 2:07-cv-13842 (E.D. Mich. May 5, 2009). The Eastern District denied that motion. Op. and Order Denying Plaintiff's Mot. for Recon., *Convertino*, No. 2:07-cv-13842 (E.D. Mich. Feb. 9, 2010). At the same time, Convertino renewed his motion to compel the Free Press, Pl.'s Renewed Mot. to Compel Produc. from the Free Press, *Convertino*, No. 2:07-cv-13842 (E.D. Mich. Apr. 29, 2009).[10] The latter motion remains pending in the Eastern District, where the discovery proceedings are being held in abeyance pending this appeal. *See* Order Holding Proceedings in Abeyance, *Convertino*, No. 2:07-cv-13842 (E.D. Mich. Apr. 15, 2011).

As the discovery dispute progressed in the Eastern District, Convertino pressed his Privacy Act claim in the district court here. After numerous discovery disputes and extensions, the district court established July 12, 2010 as the deadline for DOJ's motion for summary judgment. *See* Order at 2, *Convertino*, No. 1:04-cv-00236 (D.D.C. Dec. 7, 2009).[11]

---

[10]    Convertino also asked DOJ to grant the reporter immunity "from any potential prosecution related to the OPR leak or the January 17, 2004 article" but received no response. Kohn Aff. at 4.

[11]    The district court ordered that "Defendant's motion for summary judgment shall be filed by the latter of July 12, 2010, or 60 days after the Court's ruling on Plaintiff's pending motion to compel production of documents." *See* Order at 2, *Convertino*, No.

When the July 12, 2010 deadline arrived and Convertino had yet to discover the source of the DOJ leak, DOJ moved for summary judgment. Def.'s Mot. for Summ. J., *Convertino*, No. 1:04-cv-00236 (D.D.C. July 12, 2010). DOJ argued that Convertino could not establish a prima facie violation of the Privacy Act because, without knowing the source's identity, he could not establish the source's state of mind. Mem. in Supp. of Def.'s Mot. for Summ. J. at 47, *Convertino*, No. 1:04-cv-00236 (D.D.C. July 12, 2010) ("To establish the requisite intent, Convertino must introduce evidence concerning the state of mind of the particular individual(s) who actually disclosed the information . . . ."). Convertino cross-moved for a stay under Rule 56(f) on the ground that he was pursuing discovery to learn the source's identity from the Free Press in the Eastern District. Mot. for Stay to Depose Key Witnesses, *Convertino*, No. 1:04-cv-00236 (D.D.C. Oct. 18, 2010). He stated that he "fully intends to appeal the Eastern District['s] [] ruling on the 5th Amendment issue" in the event his motion to compel the Free Press was finally denied. Pl.'s Mem. in Supp. of Mot. for Stay at 4, *Convertino*, No. 1:04-cv-00236 (D.D.C. Oct. 18, 2010).

On March 24, 2011, the district court granted summary judgment to DOJ and denied Convertino's Rule 56(f) motion to stay. *Convertino*, 769 F. Supp. 2d at 156. The court concluded that, although Convertino's motion to compel the Free Press "is still pending in the Eastern District," a stay "would likely be futile" as Convertino had been "wholly unsuccessful" in identifying the reporter's source for "several years." *Id.* at 155-56. The court was "unwilling to prolong this litigation further" on "Convertino's speculative hope that

---

1:04-cv-00236 (D.D.C. Dec. 7, 2009). Three days later, the court denied Convertino's motion to compel production. *See* Order, *Convertino*, No. 1:04-cv-00236 (D.D.C. Dec. 10, 2009).

things will suddenly go his way in Michigan." *Id.* at 156. The court then assured Convertino that, "if the Eastern District . . . compels discovery and Convertino is in fact able to obtain the information he seeks, he is free to move for reconsideration in light of newly discovered evidence." *Id.*

Convertino timely appealed.

## II.

It is undisputed that Convertino currently lacks the evidence necessary to survive summary judgment on his Privacy Act claim. "To state a claim for relief [under the Privacy Act], a plaintiff must establish that (1) the agency violated a provision of the [] Act, (2) the violation was intentional or willful, 5 U.S.C. § 552a(g)(4), and (3) the violation had an adverse effect on the plaintiff, 5 U.S.C. § 552a(g)(1)(D)." *Paige v. Drug Enforcement Admin.*, 665 F.3d 1355, 1358-1359 (D.C. Cir. 2012) (internal quotation marks omitted). Because Convertino does not know the identity of the individual(s) who disclosed information regarding the OPR referral, he cannot show that the disclosure was "intentional or willful." *See Maydak v. United States*, 630 F.3d 166, 169 (D.C. Cir. 2010) (to recover on Privacy Act claim plaintiff must "show 'that the agency acted in a manner which was intentional or willful' " (quoting 5 U.S.C. § 552a(g)(4))). Sifting through the multiple issues in Convertino's pursuit of his claims, we decide today only whether the district court erred in denying Convertino's Rule 56(f) motion to stay.[12]

---

[12]    Rule 56(f) provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>   (1) deny the motion;

10

"[W]e review the denial of a Rule 56(f) motion for abuse of discretion . . . ." *Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006). While the district court enjoys "broad discretion in structuring discovery," *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991), summary judgment is premature unless all parties have "had a full opportunity to conduct discovery." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). A Rule 56(f) motion requesting time for additional discovery should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995); *see also Resolution Trust Corp. v. N. Bridge Assocs.*, 22 F.3d 1198, 1203 (1st Cir. 1994) ("Consistent with the salutary purposes underlying Rule 56(f), district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter.").

To obtain Rule 56(f) relief, the movant must submit an affidavit which "state[s] with sufficient particularity . . . why [additional] discovery [is] necessary." *Ikossi v. Dep't. of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (internal quotation marks, citation omitted). The affidavit must satisfy three criteria. First, it must outline the particular facts he intends to discover and describe why those facts are necessary to the litigation. *Byrd v. U.S. Envtl. Prot. Agency*, 174 F.3d 239, 248 (D.C. Cir. 1999) ("Byrd [must] show what facts he intended to discover that would create a triable issue . . . ."). Second, it must explain "why [he] could not produce [the

> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

FED. R. CIV. P. 56(f) (2009).

facts] in opposition to the motion [for summary judgment].” *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999); *see also Berkeley*, 68 F.3d at 1414 (“Notwithstanding the usual generous approach toward granting Rule 56(f) motions, the rule is not properly invoked to relieve counsel's lack of diligence.”); *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) (“[T]he trial court need not aid [a party] who ha[s] occasioned [its] own predicament through sloth.”). Third, it must show the information is in fact discoverable. *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006) (“We will not find an abuse of discretion where the requesting party has offered only a conclusory assertion without any supporting facts to justify the proposition that the discovery sought will produce the evidence required.” (internal quotation marks omitted)).

Convertino easily satisfied the first two Rule 56(f) criteria. In opposition to DOJ's summary judgment motion, Convertino submitted the affidavit of his counsel, who outlined the particular facts Convertino hoped to discover and why those facts were necessary to his claim. *See* Kohn Aff. at 2, *Convertino*, No. 1:04-cv-00236 (D.D.C. Oct. 18, 2010) (Kohn Affidavit) (“[K]nowledge of the identity of Mr. Ashenfelter's source for the Article is essential to every element of Mr. Convertino's Privacy Act claim against Defendant DOJ.”). Convertino's counsel also described why Convertino “could not produce [the facts] in opposition to the [DOJ's] motion [for summary judgment],” *Carpenter*, 174 F.3d at 237, to wit: although the reporter knew the identity of his source, the Eastern District had sustained the reporter's Fifth Amendment assertion, requiring Convertino to again seek discovery from the Free Press. *See* Kohn Affidavit at 4-5. Convertino's counsel also set forth Convertino's extensive efforts to obtain the identity of the DOJ leaker. *See id.* In fact, the district court here described his efforts in the Eastern District as “monumental.” *Convertino*, 769 F. Supp. 2d at

144. Convertino's failure to discover the source's identity, then, was plainly *not* the product of a "lack of diligence," *Berkeley*, 68 F.3d at 1414, or "sloth," *Wichita Falls*, 978 F.2d at 919.

The remaining issue is whether the information can in fact be obtained through additional discovery. *See Messina*, 439 F.3d at 762. DOJ argues that further discovery is simply a waste of time. Appellee's Br. 20-24. The reporter has thus far successfully maintained his Fifth Amendment privilege and the Free Press has consistently stated that the reporter is the "only person on the newspaper's staff with knowledge regarding the article's confidential sources." *Id. a*t 2. Thus, in DOJ's view, Convertino has offered no more than a " 'speculative hope' that further discovery . . . would be likely to produce a triable issue of fact." *Id.* at 18; *see Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 813 (2d Cir. 1994) (upholding Rule 56(f) denial because pursuit of discovery was "grounded in mere speculation").

Convertino counters that he has alleged more than enough facts to show that the reporter and/or the Free Press has the information he needs and that he can obtain that information through discovery. Appellant's Br. 24-26. In particular, because his ability to obtain the information from the reporter is—for now—foreclosed, he believes the Eastern District may revisit—and grant—his pending motion to compel discovery from the Free Press. Appellant's Br. 17. And if the Eastern District denies that motion, Convertino plans to appeal the Eastern District's ruling upholding the reporter's Fifth Amendment claim. Kohn Affidavit at 5 ("Should the Eastern District deny the Motion to Compel the Detroit Free Press, . . . Convertino will appeal the Eastern District's decision to sustain Mr. Ashenfelter's claim of Fifth Amendment privilege.").

We note, first, that the district court's decision is built, at least in part, on a faulty premise. In granting summary judgment, the court suggested that Rule 60(b) provides Convertino with an "escape valve" in the event he eventually discovers the source's identity through Eastern District discovery. *See Convertino*, 769 F. Supp. 2d at 156 ("[A]n escape valve is still available to Convertino even after this Opinion and the Order memorializing its reasoning. After all, if the Eastern District . . . compels discovery and Convertino is in fact able to obtain the information he seeks, he is free to move for reconsideration in light of newly discovered evidence."). The court apparently (and mistakenly) assumed that Convertino could maintain the ancillary discovery proceedings in the Eastern District even after the Privacy Act litigation ended here. As we explained in *In re City of El Paso*, 887 F.2d 1103 (D.C. Cir. 1989), however, if there is "no pending trial in which [the requested] discovery can be used," the "availability of discovery subpoenas" becomes a "moot [question]." 887 F.2d at 1106; *see also Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999) (pending discovery motions mooted by disposition of underlying cause of action). Even DOJ acknowledged this error at oral argument. *See* Oral Argument Recording at 49:40, *Convertino*, No. 11-5133, (D.C. Cir. Mar. 12, 2012) (district court's suggestion that Eastern District discovery can continue after court's grant of summary judgment here "is clearly wrong").

Moreover, we believe that Convertino submitted ample evidence to suggest that additional discovery could reveal the source's identity. First, the Eastern District may decide to compel discovery from the Free Press as presaged in its order denying Convertino's initial motion to compel the Free Press. *See Convertino*, 2008 WL 4104347, at \*10 n.17. Referencing the public record in the Eastern District's discovery proceeding, during which the reporter produced a privilege log listing 108 documents, Convertino also produced evidence

suggesting at least one other individual at the Free Press knows the identity of the reporter's source. *See* Mem. in Supp. of Renewed Mot. to Compel Produc. at 2-3, *Convertino*, No. 2:07-cv-13842 (E.D. Mich. Apr. 29, 2009). It is reasonably likely that a Free Press "editor" was also privy to at least some of these documents in view of the Free Press's assertion that it permits a reporter to publish an anonymously-sourced article only if the article is approved by "the highest-ranking editor available" and the fact that the documents were created within the scope of the reporter's employment with the Free Press. *Id.* at 4. At the very least, a deposition or document disclosure from the Free Press may produce information leading to the source's identity. While its reporter invoked his Fifth Amendment privilege against self-incrimination, the Free Press—as a corporation—enjoys no Fifth Amendment privilege. *See United States v. White*, 322 U.S. 694, 698 (1944) ("The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals."); *In re Grand Jury Proceedings*, 576 F.2d 703, 705 (6th Cir. 1978) ("Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation."). Finally, Convertino can appeal the Eastern District's Fifth Amendment ruling to the Sixth Circuit once a final order is entered.[13]

Considering the "generous approach" the district court should take in deciding a Rule 56(f) motion, *Berkeley*, 68 F.3d at 1414, the district court's mistaken view that Convertino could continue to seek discovery in the Eastern

---

[13] We also note that the discovery delays in Convertino's pursuit of his Privacy Act claim have not occurred because of his action/inaction. *See Resolution Trust*, 22 F.3d at 1208-09 (district court abused discretion in denying Rule 56(f) motion when most of delay attributable to opposing party).

District notwithstanding the termination of Convertino's Privacy Act litigation and the "monumental" efforts Convertino has taken to discover the needed information, *Convertino*, 769 F. Supp. 2d at 144, we believe the district court committed an abuse of discretion in denying Convertino's Rule 56(f) motion. Accordingly, we reverse the district court's judgment and remand the case for further proceedings consistent with this opinion.

*So ordered.*