RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0174p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

RICHARD G. CONVERTINO,

*Plaintiff-Appellant,*

*v.*

No. 14-1722

UNITED STATES DEPARTMENT OF JUSTICE,

*Defendant,*

DAVID ASHENFELTER,

*Interested Party-Appellee.*

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:07-cv-13842—Robert H. Cleland, District Judge.

Argued: August 19, 2014

Decided and Filed: July 31, 2015

Before: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Thomas J. Gruscinski, CONVERTINO & ASSOCIATES, Plymouth, Michigan, for Appellant. Richard E. Zuckerman, HONIGMAN MILLER SCHWARTZ AND COHN LLP, Detroit, Michigan, for Appellee Ashenfelter. **ON BRIEF:** Thomas J. Gruscinski, CONVERTINO & ASSOCIATES, Plymouth, Michigan, for Appellant. Richard E. Zuckerman, HONIGMAN MILLER SCHWARTZ AND COHN LLP, Detroit, Michigan, Brian D. Wassom, HONIGMAN MILLER SCHWARTZ AND COHN LLP, Bloomfield Hills, Michigan, Herschel P. Fink, Detroit, Michigan for Appellee Ashenfelter.

1

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Plaintiff Richard Convertino appeals from orders entered by the district court sustaining the assertion of Fifth Amendment privilege by non-party witness David Ashenfelter in response to questions about the source or sources for a Detroit Free Press article published on January 17, 2014.  This case is an ancillary civil action initiated by Convertino to obtain discovery from Ashenfelter and the Detroit Free Press that would enable him to continue pursuing his civil claim under the Privacy Act, 5 U.S.C. § 552a, against the U.S. Department of Justice ("DOJ") in a suit currently pending in the United States District Court for the District of Columbia.  *See Convertino v. U.S. Dep't of Justice*, No. 04-0236(RCL) (D.D.C.)  For the reasons set out below, we **AFFIRM** the district court's rulings sustaining Ashenfelter's claim of privilege.

**BACKGROUND**

The roots of the present dispute lie in a 2004 scandal about prosecutorial misconduct.  After obtaining convictions on terrorism charges against three Detroit-area men in *United States v. Koubriti*, No. 01-CR-80778 (E.D. Mich.), then-Assistant U.S. Attorney Richard Convertino became the subject of an investigation by the DOJ's Office of Professional Responsibility ("OPR") probing allegations of ethical violations in his handling of the case.  Convertino maintains that the investigation was one of several retaliatory actions taken to punish him for testifying before the Senate Finance Committee in September 2003 contrary to the wishes of some higher officials at the DOJ.

An unidentified source (or sources) within the DOJ leaked information about the OPR investigation to David Ashenfelter, then a reporter for the Detroit Free Press, in late 2003 or early 2004.  On January 17, 2004, the Detroit Free Press published an article about the OPR investigation under Ashenfelter's by-line.  David Ashenfelter, *Terror Case Prosecutor is Probed on Conduct*, Detroit Free Press, Jan. 17, 2004.  The article detailed some of the alleged misconduct under investigation, including allegations that Convertino withheld *Brady* materials

and threatened a defense lawyer with a baseless criminal investigation. *Id.* Ashenfelter wrote in the article that information about the OPR investigation was divulged by DOJ officials "who spoke on condition of anonymity, fearing repercussions." *Id.*

The January 17, 2004 article prompted an investigation by the DOJ Office of the Inspector General ("OIG") in an effort to discover the source of the leak. The OIG investigation was ultimately unsuccessful. OIG identified and interviewed approximately thirty DOJ employees in Detroit and Washington, DC who had access to the OPR documents; some were interviewed several times. By the end of the investigation, the OIG had received affidavits "from all of these individuals in which all denied providing the information to the Detroit Free Press." (R. 17-7, Redacted OIG Report, PageID 222.)

An array of litigation followed. The government requested that the terrorism convictions in the *Koubriti* case be vacated based on violations of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) that had been substantiated by the DOJ's own internal review. *See United States v. Koubriti*, 336 F. Supp. 2d 676 (E.D. Mich. 2004) (vacating terrorism convictions on the government's confession of error). The *Koubriti* defendants subsequently filed a § 1983 action against Convertino; their claims were eventually dismissed on the determination that Convertino was entitled to prosecutorial and qualified immunity. *Koubriti v. Convertino*, 593 F.3d 459 (6th Cir. 2010). Convertino was criminally prosecuted for obstruction of justice, but was acquitted by a jury of the charges. *United States v. Convertino*, No. 2:06-CR-20173 (E.D. Mich. March 29, 2006).

The present appeal arises from a civil suit against the DOJ filed by Convertino in the United States District Court for the District of Columbia. Convertino's complaint alleges that the OPR investigation, the leak, and the disciplinary measures he suffered were in retaliation for his testimony before the Senate Finance Committee in 2003. A 2005 ruling whittled the suit down to the single claim that the DOJ violated Convertino's rights under the Privacy Act, 5 U.S.C. § 552, when the unidentified official or officials leaked information about the OPR investigation to Ashenfelter. *See Convertino v. U.S. Dep't of Justice*, 393 F. Supp. 2d 42 (D.D.C. 2005). Significantly for the claim of Fifth Amendment privilege at issue in this appeal, Convertino's complaint alleges that DOJ officials illegally provided Ashenfelter with two

confidential documents connected with the OPR investigation: a referral letter requesting the investigation, and a letter from the OPR to Convertino dated December 2, 2003. Convertino's ability to pursue his Privacy Act claim rests on his ability to identify the source of the leak and establish that the disclosure was "intentional and willful." *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (reversing summary judgment and remanding to allow Convertino to complete his efforts to discover the identity of the official or officials responsible for the leak).

In July 2007, Convertino filed a motion to compel production from Ashenfelter and the Detroit Free Press in the Eastern District of Michigan, initiating this ancillary discovery proceeding. The district court granted the motion to compel as to Ashenfelter and ordered him to attend a deposition. The deposition, which was held on December 8, 2008, was unavailing— Ashenfelter asserted his Fifth Amendment privilege in response to nearly all of Convertino's questions.

Frustrated with this outcome, Convertino sought sanctions and an order requiring Ashenfelter to show cause why he should not be held in contempt, arguing that Ashenfelter had no reasonable basis to fear incrimination as a result of answering the deposition questions. Ashenfelter responded that various federal statutes criminalize the unauthorized disclosure and receipt of confidential government documents and information, and that if the allegations in Convertino's complaint were proven true, Ashenfelter "could face prosecution as one who participated directly in criminal acts, or who aided, abetted, concealed, or conspired with those who did." (R. 44, Response, PageID 805.) To illustrate the risks, Ashenfelter identified numerous criminal statutes under which he feared prosecution, *e.g.*, 18 U.S.C. § 641 (unauthorized receipt and retention of public records), 18 U.S.C. § 793 (Espionage Act violations), 18 U.S.C. § 1510 (obstruction of a criminal investigation), and Mich. Comp. Laws § 750.535 (receiving or concealing stolen property).

The district court held that the risk of incrimination was not evident either from the questions posed or from other facts already developed and, citing this Court's opinion in *In re Morganroth*, 718 F.2d 161, 167-68 (6th Cir. 1983), invited Ashenfelter to provide "a detailed affidavit . . . or ex parte *in camera* review" of his basis for asserting the privilege as to particular

questions.  (R. 51, Opinion and Order, PageID 1063-66 & n.9.)  The court ordered Ashenfelter to reappear for a deposition, which would be scheduled at the federal courthouse so that the court would be available in person to rule on any objections or assertions of privilege.  Ashenfelter accepted the district court's invitation and filed an *ex parte* affidavit under seal.

The parties reconvened for a second deposition on April 21, 2009.  Ashenfelter again asserted his Fifth Amendment privilege in response to questions about the leak.  The litigants sought a ruling from the district court on Ashenfelter's assertion of privilege as to three questions:  (1) whether Ashenfelter contacted any editors regarding the search for documents responsive to Convertino's subpoena; (2) whether Ashenfelter informed an editor of the identity of the source or sources for the article; and (3) a request to identify the DOJ official or officials who provided Ashenfelter the information about the OPR investigation discussed in the January 17, 2004 article.  After an *ex parte* session with Ashenfelter's counsel, the district court found that Ashenfelter had a reasonable basis for fearing that answering the questions would entail self-incrimination and sustained the assertion of privilege.

The district court later reduced its ruling to two written opinions—one public, and one sealed and disclosed only to Ashenfelter on an *ex parte* basis in light of the sensitive information discussed therein.  Convertino twice moved for reconsideration.  The first motion, which Convertino made at the April 21, 2009 deposition immediately after receiving the district court's ruling that Ashenfelter's assertion of privilege was valid, was based on a theory of waiver not previously raised in the case.  Convertino moved for reconsideration again in August 2013, citing a statement by then-Attorney General Eric Holder that the Department of Justice "will not prosecute any reporter for doing his or her job" so long as he was Attorney General.  (R. 119, Motion for Reconsideration, PageID 2082.)  The district court denied both motions.

On April 30, 2014, noting that there had been no further activity, the district court entered its final order under Federal Rule of Civil Procedure 58(a)(1).  Convertino filed a notice of appeal thirty days later, and a motions panel of this Court subsequently deemed his appeal to be timely.[1]

---

[1]We pause to address a stumbling block that caused the Court an unwelcome headache from this appeal. The record initially transmitted to this Court did not include the three sealed documents pertinent to the district

**DISCUSSION**

The Fifth Amendment of the U.S. Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. The privilege may be asserted "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 444 (1972). Zealously safeguarded as "an important constitutional liberty," *Hoffman v. United States*, 341 U.S. 479, 490 (1951), that was "hardearned by our forefathers," *Quinn v. United States*, 349 U.S. 155, 161 (1955), the privilege protects "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence," *Malloy v. Hogan*, 378 U.S. 1, 8 (1964). In view of the significance of the right, its protections are broadly construed. *Maness v. Meyers*, 419 U.S. 449, 461 (1975). We will reverse a district court's ruling that the privilege was properly invoked only upon the "definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Mack*, 159 F.3d 208, 217 (6th Cir. 1998) (internal quotation marks omitted).

The test for a valid invocation of the Fifth Amendment, discussed in detail in the Supreme Court's seminal case, *Hoffman v. United States*, is whether the witness has "reasonable cause to apprehend danger from a direct answer." 341 U.S. at 486. The scope of the privilege protects the witness from compelled disclosure "not merely . . . [of] evidence which may lead to criminal conviction," but also of "information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness*, 419 U.S. at 461 (citing

court's ruling (the sealed affidavit, the transcript of the April 21, 2009 *ex parte* proceedings, and the sealed opinion). The Federal Rules of Appellate Procedure, as implemented by the Sixth Circuit local rules, place the burden squarely on Convertino as the appellant to ensure that the relevant portions of the record were transmitted to this Court. Fed. R. App. P. 10(b) & 11(a); 6 Cir. R. 30(b)(2)(b), (c)(1)(A), & (g). Convertino was on notice of the significance of these documents, yet he failed to include the affidavit and the opinion in his designation of the record, and, though he designated the April 21, 2009 *ex parte* proceedings as part of the record, he failed to ensure that a transcript was available and part of the electronic record. This Court has discretion to dismiss an appeal where such missing portions of the record create a barrier to meaningful review. *United States v. Darwich*, 574 F. App'x 582, 590-91 (6th Cir. 2014); *Spurling v. Allstate Indem. Co.*, 487 F. App'x 982, 983 (6th Cir. 2012) (*per curiam*); *Lane v. City of Jackson*, 86 F. App'x 874 (6th Cir. 2004).

Rather than dismiss the action, this Court acted in its discretion to complete the record with the missing documents pursuant to Fed. R. of App. Proc. 10(e)(2)(C). The exercise entailed substantial effort and delay, which was caused in part by the district court's failure to maintain the documents in an accessible location or form. We echo the warning of the Ninth Circuit that "we only have a finite amount of time and resources to devote to the many cases before us; we simply do not have the wherewithal to discharge the responsibilities of the parties as well as our own. Litigants should be aware that failure to provide transcripts or other required materials may well result in dismissal of the appeal or other sanctions." *Hall v. Whitley*, 935 F.2d 164, 165 (9th Cir. 1991).

*Hoffman*, 341 U.S. at 486). A court may only require a witness to answer if it is "'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) cannot possibly have such tendency' to incriminate." *Hoffman*, 341 U.S. at 488 (quoting *Temple v. Commonwealth*, 75 Va. 892, 898 (1880)).

In *Hoffman*, the Court recognized that "if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee." *Id.* at 486. Rather than allowing the witness to be placed in such a double-bind, the Court held that "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486-87. As a prior opinion of this Court aptly summarized the standard from *Hoffman*, an invocation of privilege should be sustained "if a court can, by the use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution." *In re Morganroth*, 718 F.2d at 169. "[I]n determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical." *Emspak v. United States*, 349 U.S. 190, 198 n.18 (1955) (internal quotation marks omitted).

*Hoffman* held that a witness subpoenaed to testify in a grand jury investigation of racketeering could validly rely on the Fifth Amendment in refusing to answer questions about his business and his latest communications with a missing witness, although there were scant facts established formally in the record that could furnish a basis for his fear of prosecution. 341 U.S. at 488. The Supreme Court found the lower court to have erred in failing to consider the "background" circumstances making up the setting and context of the identified questions, including the ongoing criminal investigation, the reality of certain criminal conduct, the witness's acknowledged police record, and the possibility that acknowledging communication with a fugitive witness could have "forged links in a chain of facts imperiling [Hoffman] with conviction of a federal crime." *Id.* at 487-88. These circumstances, the Court held, required that the witness' claim of privilege be sustained. *Id.* at 488.

Both the Supreme Court and this Court have repeatedly applied *Hoffman* to sustain invocation of the Fifth Amendment privilege in response to questions regarding the individual's personal or professional associations "when asked in a setting of possible incrimination." *Emspak*, 349 U.S. at 199 (holding that a witness before the House Un-American Activities Committee could properly invoke the Fifth Amendment privilege when asked about associations and affiliations); *see also Malloy v. Hogan*, 378 U.S. 1, 13-14 (1964) (holding that a witness properly invoked the Fifth Amendment to refuse to answer questions about associates at the time of a prior gambling arrest, despite the expiration of the statute of limitations, because such disclosure "might furnish a link in a chain of evidence sufficient to connect the petitioner with a more recent crime"); *United States v. Bates*, 552 F.3d 472, 475-76 (6th Cir. 2009) (holding that blanket Fifth Amendment privilege could be invoked when necessary foundation questions would require the witness to admit association with alleged co-conspirator); *Aiuppa v. United States*, 201 F.2d 287 (6th Cir. 1952) (holding that the privilege was properly invoked in response to questions about whether the witness knew certain individuals allegedly involved in organized crime). Similarly, the Supreme Court found "substantial ground" for a fear of possible incrimination where, in a grand jury investigation of union racketeering, the custodian of a union's books and records refused to answer questions related to the whereabouts of those records. *Curcio v. United States*, 354 U.S. 118, 121 (1957); *see also United States v. Hubbell*, 530 U.S. 27, 43 (2000) ("[W]e have no doubt that the constitutional privilege against self-incrimination protects the target of a grand jury investigation from being compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence.").

We affirm the validity of Ashenfelter's invocation as controlled by and naturally flowing from *Hoffman* and its progeny. The context of this discovery proceeding demonstrates a precise, and even acute, risk of incrimination. Convertino's complaint in his merits suit against the DOJ alleges facts that if proven could implicate Ashenfelter in the commission of one or more crimes, including the allegation that federal officials illegally provided Ashenfelter with two confidential OPR documents. If proven, this allegation would appear to establish that Ashenfelter "receive[d]" a "record . . . of the United States or of [an] agency or department thereof," raising a risk of prosecution under 18 U.S.C. § 641. In this setting, it requires very little "judicial

imagination," if any, to comprehend that Ashenfelter could have reasonable cause to fear that answering questions regarding the source or sources of the leak would risk injurious disclosure. *See Hoffman*, 341 U.S. at 486-87; *Morganroth*, 718 F.2d at 169. Similarly, an answer to Convertino's question about Ashenfelter's search for documents responsive to the subpoena may be comprehended to pose a risk of incrimination where the documents, or evidence that Ashenfelter possessed or controlled such documents, could constitute direct evidence of the *actus reus* for the illegal receipt of agency records, punishable under § 641. *Curcio*, 354 U.S. at 121; *see also Hubbell*, 530 U.S. at 43.

Convertino argues that Ashenfelter could not have had a reasonable cause to fear criminal liability because prosecution would be unlikely. As evidence, Convertino points out that the DOJ completed an investigation of the leak without filing any criminal charges. The validity of an asserted Fifth Amendment privilege, however, turns not on the probability or likelihood of prosecution, but rather on the possibility of prosecution. *In re Folding Carton Antitrust Lit.*, 609 F. 2d 867, 872 (7th Cir. 1979) (collecting cases); *W.J. Usery v. Brandel*, 87 F.R.D. 670, 68 (W.D. Mich. 1980) ("Only if there is a legal bar to initiation of criminal proceedings, such as the expiration of the statute of limitations, a grant of immunity, or second jeopardy, none of which are present here, can there be no possibility of prosecution"). Convertino's arguments about the lack of apparent political will to prosecute Ashenfelter, or about the unsettled points of law that might ultimately render a criminal prosecution unsuccessful, are therefore without merit. A witness is not required to shoulder such risks.

Convertino also raises for the first time on appeal the argument that any prosecution related to the leak would be barred by the statute of limitations. He emphasizes that more than eleven years have now elapsed since the article resulting from the leak was published, and that the period of limitations applicable to prosecutions under § 641 is five years. 18 U.S.C. § 3282. Despite Convertino's failure to make this argument below, the district court raised the issue *sua sponte* in the sealed record and ultimately concluded that the statute of limitations did not prevent Ashenfelter from asserting the privilege, even though his second deposition occurred more than five years after the publication of the article. We agree.

We consider the issue according to the circumstances that existed at the time the privilege was invoked. *See In re Master Key Litigation*, 507 F.2d 292, 293 (9th Cir. 1974) (analyzing whether the statute of limitations had run as of when the witness invoked the privilege at the deposition). Consistent with *Hoffman*, the district court could not have overruled the assertion of privilege unless it was "perfectly clear, from a careful consideration of all the circumstances in the case" that any prosecution Ashenfelter might reasonably fear would be time-barred. *Hoffman*, 341 U.S. at 488 (internal quotations marks omitted). At least two circumstances in this case would prevent any such conclusion here. First, § 641 criminalizes not only receipt of confidential government documents, but also conduct that might follow their receipt, including their retention or disposal. As a result, we cannot be certain that a prosecution based on a theory of continuing retention or of subsequent disposal of illicitly obtained OPR records would have been time-barred in April 2009. Second, the Supreme Court has held that a witness may refuse to identify co-conspirators or associates in prior, limitations-barred crimes where such disclosure "might furnish a link in a chain of evidence sufficient to connect the [witness] with a more recent crime." *Malloy*, 378 U.S. at 13-14. In light of the common practice in journalism of developing a relationship with a source over time, it is well within "judicial imagination" to conceive that the leak leading to the January 2004 article may not be the only cause of Ashenfelter's fear of prosecution. *Morganroth*, 718 F.2d at 169.

Our holding that there is ample basis for sustaining Ashenfelter's assertion of privilege does not rely on the information contained in the sealed record, which the district court requested Ashenfelter to supply under the perceived authority of *In re Morganroth*, 718 F.2d 161 (6th Cir. 1983). In *Morganroth*, this Court addressed the showing necessary to sustain an assertion of Fifth Amendment privilege "when the only possible risk of prosecution which might flow from testimony in a subsequent proceeding is for perjury." 718 F.2d at 166. On the facts of that case, we expressed concern that neither the questions themselves nor the setting in which they were asked of Morganroth shed light on whether he had a reasonable cause to fear incrimination.[2] *Id.* at 168. Thus, his privilege could not be sustained under the *Hoffman* standard. *Id.* We held that Morganroth should be given the opportunity to supply additional information or sworn

---

[2]This quandary arose because the district court had no knowledge "of the scope of content of [the] prior proceedings" and thus was unable to rule as to whether the questions asked could conceivably raise of risk of incriminating disclosure. 718 F.2d at 166, 168.

statements to substantiate his claim of privilege under the reasonable-cause standard prescribed by *Hoffman*. *Id.* at 169-70.

Of course, where no basis for invoking Fifth Amendment privilege can be postulated in light of the setting and context of the case, a witness should be given the opportunity to support a claim of privilege through appropriately protected submissions or proceedings. *See, e.g.*, *United States v. Grable*, 98 F.3d 251, 257 (6th Cir. 1996) (approving *in camera* inspection of requested documents to review the basis for a claimed act-of-production privilege). District courts must not abuse their authority by needlessly requesting this information, however, but must sustain the privilege where they can "by the use of reasonable inference or judicial imagination, conceive a sound basis" for the claim. *Morganroth*, 718 F.2d at 169. Here, for all the reasons discussed above, Ashenfelter's assertion of privilege should have been sustained directly under *Hoffman*. In concluding otherwise, the district court failed to consider the context of the case, the probable circumstances of the leak, and the allegations contained in Convertino's complaint. Instead, it solicited a sworn affidavit or *in camera* proceeding that could provide "specific factual backing" for the list of possible crimes Ashenfelter identified in his briefing and suggested that "[a]rguments alone, lacking distinct factual underpinnings, do not present the kind of concrete information" necessary for the court to analyze a claim of privilege. (R. 51, Opinion, PageID 1064, 1065.) In doing so, the court overlooked the Supreme Court's express rejection of a similar standard of proof in *Hoffman* based on its recognition that "if the witness . . . were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee." 341 U.S. at 486; *see also Quinn*, 349 U.S. at 161-62 ("To apply the privilege narrowly or begrudgingly—to treat it as an historical relic, at most merely to be tolerated—is to ignore its development and purpose.").

Following the district court's ruling in favor of Ashenfelter, Convertino twice moved for reconsideration. Neither motion provides a basis for disturbing the district court's ruling. Convertino's first motion for reconsideration raised the argument, not previously made over the many months of litigation relating to Ashenfelter's assertion of Fifth Amendment privilege, that an affidavit submitted by Ashenfelter in March 2008 constituted a waiver of the privilege. The

district court held that Convertino forfeited the argument by failing to raise it earlier and declined to "correct what has—in hindsight—turned out to be to be [Convertino's] poor strategic decision." (R. 83, Opinion, PageID 1727 (quotation marks omitted)).  Convertino abandons any substantive waiver argument on appeal, and so we decline to reach it.

Nor is it clear that Convertino would be likely to succeed if we did reach the issue.  Courts "must indulge every reasonable presumption against waiver."  *Emspak*, 349 U.S. at 198 (internal quotation marks omitted).  Additionally, cases distinguish between a criminal defendant or party to a case who testifies on their own behalf and an "ordinary witness," who "may 'pick the point beyond which he will not go,' and refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers sought may tend to further incriminate him."  *In re Master Key Litigation*, 507 F.2d 292, 294 (9th Cir. 1974) (quoting *Shendal v. United States*, 312 F.2d 564, 566 (9th Cir. 1963)); *Usery*, 87 F.R.D. at 683.  In his March 2008 affidavit, Ashenfelter acknowledged authorship of the article and that DOJ sources knowingly provided him the information.  (Ashenfelter explained that he offered this affidavit in an effort to satisfy Convertino's need for discovery and in support of Ashenfelter's attempt to assert a qualified reporter's privilege under the First Amendment.)  The answers to the three deposition questions at issue in this appeal could have revealed facts not yet disclosed that might constitute further links in a chain of incrimination, including the identity of witnesses and co-conspirators, and lead to more evidence about this or other leaks.  *See In re Master Key Litigation*, 507 F.2d at 294.

Convertino's second motion for reconsideration, filed on August 13, 2013, argued that then-Attorney General Holder's statement that the DOJ would not "prosecute any reporter for doing his or her job" rendered implausible any fear of criminal prosecution that Ashenfelter might harbor.  As discussed above, it is not the likelihood but rather the possibility of prosecution that matters in the assertion of privilege.  *In re Master Key Litigation*, 507 F.2d at 293.  The former Attorney General's statement did not constitute a grant of immunity to journalists, and his assurances might not outlast his own, now completed, tenure.  Even if Holder's statement reflected a policy internally enforced by the DOJ, Ashenfelter could not invoke that policy to bar a criminal prosecution.  *See United States v. Caceres*, 440 U.S. 741, 756

(1979) (holding that a criminal defendant could not enforce an internal governmental rule). The district court properly denied the motion.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**