CLAY, Circuit Judge.
 

 Plaintiff Jane Doe No. 2 appeals the district court's March 9, 2017 Order granting Defendant City of Memphis summary judgment, and the district court's May 22, 2018 Order granting Defendant's motion to strike class allegations. For the reasons set forth below, we
 
 REVERSE
 
 the district court's judgment and
 
 REMAND
 
 for further proceedings consistent with this opinion.
 

 BACKGROUND
 

 Plaintiffs, Jane Doe No. 1, Jane Doe No. 2, and Jane Doe No. 3, are three women who allege that Defendant failed to submit for testing the sexual assault kits ("SAKs") prepared after their sexual assaults. Each Plaintiff separately reported a sexual assault to the Memphis Police Department ("MPD"), and a bodily fluid sample was taken from each Plaintiff and placed in an SAK. Plaintiffs allege that Defendant possessed over 15,000 such kits that it failed to submit for testing, resulting in spoliation. Plaintiffs sought to certify a class of women whose kits Defendant failed to test.
 

 Discovery revealed that the SAKs of Jane Doe No. 1 and Jane Doe No. 3 were both tested soon after their assaults. However, Jane Doe No. 2's SAK, with which this appeal is concerned, was submitted for testing in 2013, and the results were received in 2014-eleven years after her assault in 2003. This appeal concerns only Jane Doe No. 2 and the purported class, inasmuch as Plaintiffs do not appeal the grant of summary judgment for Defendant on the claims of Jane Doe No. 1 or Jane Doe No. 3.
 

 Plaintiffs filed a complaint on December 20, 2013, alleging various constitutional violations. Pursuant to Defendant's subsequently filed motion to dismiss Plaintiffs' claims, the district court dismissed with prejudice all of Plaintiffs' claims except their claims of sex discrimination in violation of the Equal Protection Clause. Discovery proceeded on Plaintiffs' remaining Equal Protection claim and lasted nearly two years.
 

 During discovery, Defendant produced materials on MPD's policies, procedures, and training relating to sexual assault, investigative files for the three representative Plaintiffs, and affidavits by Major Don
 Crowe of the Special Victims Unit and Sergeant Margaret Houston of the Sex Crimes Division. Defendant also produced spreadsheets it had prepared containing data from 2001 to 2005 related to MPD's investigations into sexual assaults and other violent crimes. This information constituted 7,200 pages of spreadsheets detailing 15,465 criminal investigations. Defendant claims that producing this discovery cost the City over $1 million. Because the scope of discovery and the events surrounding the discovery process are the crux of this case, more details of the nearly two years of discovery that occurred will be provided below.
 

 On January 25, 2016, Defendant moved for summary judgment on all of Plaintiffs' claims. On February 5, 2016, Defendant filed a Motion to Strike Class Allegations pursuant to Federal Rule of Civil Procedure 23(d)(1)(D). On March 9, 2017, the district court granted Defendant's motions for summary judgment as to Jane Doe No. 1, Jane Doe No. 2, and Jane Doe No. 3.
 

 On March 15, 2017, Plaintiffs filed a Motion to Reconsider Order Granting Summary Judgment as to Jane Doe No. 2, and on May 17, 2018, the district court denied Plaintiffs' motion. On May 22, 2018, the district court granted Defendant's Motion to Strike Class Allegations.
 

 Plaintiffs then appealed to this Court the district court's order granting Defendant summary judgment and its order granting Defendant's motion to strike class allegations.
 
 [1]
 

 DISCUSSION
 

 Standard of Review
 

 We review de novo a district court's grant of summary judgment.
 
 Spadafore v. Gardner
 
 ,
 
 330 F.3d 849
 
 , 851 (6th Cir. 2003). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party.
 
 Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
 
 ,
 
 475 U.S. 574
 
 , 587,
 
 106 S.Ct. 1348
 
 ,
 
 89 L.Ed.2d 538
 
 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
 
 Anderson v. Liberty Lobby, Inc.
 
 ,
 
 477 U.S. 242
 
 , 251-52,
 
 106 S.Ct. 2505
 
 ,
 
 91 L.Ed.2d 202
 
 (1986).
 

 "This court reviews a district court's decision on a Rule 56(d) motion for discovery for an 'abuse of discretion.' "
 
 In re Bayer Healthcare & Merial Ltd. Flea Control Prods. Mktg. & Sales Practices Litig.
 
 ,
 
 752 F.3d 1065
 
 , 1074 (6th Cir. 2014) (quoting
 
 United States v. Dairy Farmers of Am., Inc.
 
 ,
 
 426 F.3d 850
 
 , 862 (6th Cir. 2005) ). "An abuse of discretion occurs when the reviewing court is left with the definite and firm conviction that the trial court committed a clear error of judgment."
 
 FTC v. E.M.A. Nationwide, Inc.
 
 ,
 
 767 F.3d 611
 
 , 623 (6th Cir. 2014) (quoting
 
 United States v. Hunt
 
 ,
 
 521 F.3d 636
 
 , 648 (6th Cir. 2008) ). To reverse, this Court must find that the district court's "ruling was arbitrary, unjustifiable, or clearly unreasonable."
 

 Id.
 

 Analysis
 

 While Plaintiffs' underlying claim pertains to Equal Protection Clause violations,
 Plaintiffs acknowledge that their primary argument "is the absence of a meaningful opportunity to conduct discovery" prior to the entry of summary judgment. (Appellants' Br. 20.) Plaintiffs do not argue in their briefs that the district court erred in striking class allegations based on the record before the court. Thus, we emphasize at the outset that all we are asked to consider is whether the district court erred in granting summary judgment and striking Plaintiffs' class allegations before Plaintiffs had a meaningful chance to pursue further discovery.
 

 a. Sex Discrimination Claim
 

 To the extent that the merits of Plaintiffs' underlying claims are relevant to our analysis of whether the district court abused its discretion in denying further discovery, we briefly note the elements of Plaintiffs' claim of sex discrimination in violation of the Equal Protection Clause.
 

 For a plaintiff to succeed on an Equal Protection claim of sex discrimination, she "must show that she is a member of a protected class and that she was intentionally and purposefully discriminated against because of her membership in that protected class."
 
 Jones v. Union County
 
 ,
 
 296 F.3d 417
 
 , 426 (6th Cir. 2002). The latter showing requires a demonstration that it is the policy or custom of Defendant to provide less protection to victims of sexual assault than those of other crimes, and that gender discrimination was the motivation for this disparate treatment.
 
 See
 
 id.
 

 Absent direct evidence of discriminatory motivation, "[a] discriminatory effect which is severe enough can provide sufficient evidence" of such motivation under appropriate circumstances.
 
 See
 

 United States v. Thorpe
 
 ,
 
 471 F.3d 652
 
 , 661 (6th Cir. 2006) (quoting
 
 United States v. Tuitt
 
 ,
 
 68 F. Supp. 2d 4
 
 , 10 (D. Mass. 1999) ).
 

 To adequately review the claims made in this appeal relating to discovery, we must scrutinize the details of the discovery process. After a May 2014 scheduling order, Plaintiffs submitted their first set of interrogatories and requests for production of documents, which included, as relevant to Plaintiffs' claims on appeal, the following:
 

 INTERROGATORY NO. 3:
 

 For each SAK collected by the Defendant during the years 1980 to the present, identify the following:
 

 a) the name, gender, and race of the individual from whom the SAK was collected;
 

 b) the date of collection of the SAK;
 

 c) the crime being investigated;
 

 d) the physical location(s), person/entity with custody of each SAK, dates that each SAK was in a particular location; and
 

 e) any other identifying information used by the Defendant to distinguish between SAKs.
 

 INTERROGATORY NO. 4:
 

 For each SAK identified in the preceding Interrogatory, state and identify the following:
 

 a) whether and when the SAK has been tested for serology;
 

 b) whether and when the SAK underwent forensic DNA analysis;
 

 c) any reason that each SAK was or was not submitted for testing within 96 hours of recollection;
 

 d) any reason that each SAK was submitted for testing on the date(s) it was submitted;
 

 e) any individual or agency that requested and/or approved submission of the SAK for serology/DNA testing;
 

 f) any individual or agency that declined to approve submission of the SAK for serology/DNA testing;
 

 g) any cost associated with the testing of each SAK and what person/entity bore any cost identified;
 

 h) and whether and when the suspect of the crime for which the SAK was collected and charged with a crime for which the SAK was collected.
 

 * * *
 

 INTERROGATORY NO. 5:
 

 For each DNA sample collected by the Defendant during the years 1980 to the present for crimes
 
 other than sexual
 

 assault
 
 , identify the following:
 

 a) the name, gender, and race of the individual from whom the DNA sample was collected;
 

 b) the date of collection of the DNA sample;
 

 c) the crime being investigated;
 

 d) the physical location(s), person/entity with custody of each DNA sample, dates that each DNA sample was in a particular location; and
 

 e) any other identifying information used by the Defendant to distinguish between DNA samples.
 

 INTERROGATORY NO. 6:
 

 For each DNA sample identified in the preceding Interrogatory, state and identify the following:
 

 i) whether and when the DNA sample has been tested for serology;
 

 j) whether and when the DNA sample underwent forensic DNA analysis;
 

 k) any reason that each DNA sample was or was not submitted for testing within 96 hours of recollection;
 

 l) any reason that each DNA sample was submitted for testing on the date(s) it was submitted;
 

 m) any individual or agency that requested and/or approved submission of the DNA sample for serology/DNA testing;
 

 n) any individual or agency that declined to approve submission of the DNA sample for serology/DNA testing;
 

 o) any cost associated with the testing of each DNA sample and what person/entity bore any cost identified;
 

 p) and whether and when the suspect of the crime for which the DNA sample was collected and charged with a crime for which the DNA sample was collected.
 

 * * *
 

 REQUEST NO. 18:
 

 Produce any and all documents and electronically stored information which relate to and/or pertain to your response to Interrogatory No. 3.
 

 * * *
 

 REQUEST NO. 19:
 

 Produce any and all documents and electronically stored information which relate to and/or pertain to your response to Interrogatory No. 4.
 

 * * *
 

 REQUEST NO. 20:
 

 Produce any and all documents and electronically stored information which relate to and/or pertain to your response to Interrogatory No. 5.
 

 * * *
 

 REQUEST NO. 21:
 

 Produce any and all documents and electronically stored information which relate to and/or pertain to your response to Interrogatory No. 6.
 

 (R. 25-2, Plaintiffs' First Set of Discovery Requests, Page ID# 488-90, 500.) Request for Production Nos. 18 through 21 contemplate the production of the investigative files of the victims of sexual assault and other violent crimes, inasmuch as these files were the source material for Defendant's eventual responses to Interrogatory Nos. 3 and 4.
 

 Defendant did not respond to this set of discovery requests by the June 2014 deadline to do so. Instead, Defendant sought to limit the scope of discovery via a motion for a protective order in August 2014, which the court denied in January 2015. Also in August 2014, Plaintiffs sought to compel responses to their discovery requests, which were months overdue.
 

 In September 2014, the district judge allowed Plaintiffs leave to amend their complaint and noted that "Plaintiff's diligence is largely dependent on the depth of discovery, which is currently limited by Defendant." (R. 36, Order, Page ID# 366.)
 

 On January 12, 2015, the court ordered Defendant to respond to Interrogatories 3 and 4 by January 31, 2015, but limited the scope of those interrogatories to SAKs collected between January 1, 1987 and June 1, 2014. The court did not directly address Plaintiffs' requests for production in this order, instead ordering the parties to attempt to resolve their disputes on their own and report back to the court as to the resolution of their dispute.
 

 On January 30, 2015, Defendant moved to extend its deadline for responding to the discovery requests, and the court ordered that "Defendant shall have up to and including February 4, 2015 to properly respond to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents." (R. 60, Order, Page ID# 615.) On February 4, Defendant provided an initial response to Plaintiffs' discovery requests. Responding to Interrogatory Nos. 3 and 4, Defendant referred Plaintiffs to a spreadsheet that it had created containing some information responsive to those requests. Defendant included a disclaimer that while "every attempt has been made to assure the accuracy of the information contained in the spreadsheet," "the only way to verify its accuracy is to review each investigative file." (R. 153-3, Responses to Interrogatories, Page ID# 9098.) The response also made clear that reviewing the investigative files for the spreadsheet was an ongoing process and that the spreadsheet would be updated accordingly. Defendant's response to Plaintiffs' Request for Production Nos. 18 and 19 also referred Plaintiffs to the spreadsheet. Defendant provided several supplemental responses to Plaintiffs' discovery requests from April 2015
 
 [2]
 
 through August 2015, but never suggested that these supplements made its responses to Plaintiffs' requests complete.
 

 At a July 9, 2015 status conference, Plaintiffs complained that discovery had not progressed, and the Court admonished Defendant to provide Plaintiffs with responses to their discovery requests.
 

 On August 31, 2015, a status conference was held on Plaintiffs' August 2014 motion to compel. Plaintiffs agreed to withdraw their motion, as some documents had been produced and production was ongoing. By September 2015, Defendant estimated that its responses to Plaintiffs' discovery requests could be completed by May 2016.
 

 In a December 2015 status conference, Defendant acknowledged that its discovery responses remained incomplete and reiterated its estimate that it could complete those responses by May 2016. Yet the following month Defendant moved for summary judgment. It was only
 
 after
 
 the motion for summary judgment was filed that Defendant produced three of the five
 years of spreadsheet information that constituted the bulk of its responses to Plaintiffs' discovery requests.
 

 Moreover, it was not until February 2016 that Defendant first produced the complete investigative file of Jane Doe No. 2. It was also in February 2016 that Plaintiffs filed their Rule 56(d) affidavit, as an attachment to their response in opposition to summary judgment. That affidavit complained, as relevant to this appeal, that Defendant had not "allowed the Plaintiffs to review and inspect source documents related to the members of the class." (R. 103-2, Affidavit, Page ID# 1089.) The affidavit argued that summary judgment was improper because Defendant had failed to produce, among other things, "[s]ource investigatory documents in sexual assault cases in which SAKs were created which contain proof of discriminatory and/or stereotypical law enforcement practices." (R. 103-2, Page ID# 1090.)
 

 Turning to the main issue on appeal-the district court's denial of further discovery-when a party moves for summary judgment under Federal Rule of Civil Procedure 56, Rule 56(d) allows the "nonmovant [to] show[ ] by affidavit ... that, for specified reasons, it cannot present facts essential to justify its opposition," and upon such showing, "the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).
 
 [3]
 

 The purpose behind Rule 56(d) is to ensure that plaintiffs receive " 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment."
 
 Ball v. Union Carbide Corp.
 
 ,
 
 385 F.3d 713
 
 , 719 (6th Cir. 2004) (quoting
 
 Anderson v. Liberty Lobby, Inc.
 
 ,
 
 477 U.S. 242
 
 , 257,
 
 106 S.Ct. 2505
 
 ,
 
 91 L.Ed.2d 202
 
 (1986) ). "A party invoking [the] protections [of Rule 56(d) ] must do so in good faith by affirmatively demonstrating ... how postponement of a ruling on the motion will enable him ... to rebut the movant's showing of the absence of a genuine issue of fact."
 
 E.M.A Nationwide, Inc.
 
 ,
 
 767 F.3d at 623
 
 (quoting
 
 Willmar Poultry Co. v. Morton-Norwich Prods., Inc.,
 

 520 F.2d 289
 
 , 297 (8th Cir. 1975) ). The affidavit must "indicate to the district court [the party's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information."
 
 Ball
 
 ,
 
 385 F.3d at 720
 
 (quoting
 
 Cacevic v. City of Hazel Park
 
 ,
 
 226 F.3d 483
 
 , 488 (6th Cir. 2000) ).
 

 Moreover, "[t]he party opposing a motion for summary judgment ... possesses no absolute right to additional time for discovery under Rule 56."
 
 Emmons v. McLaughlin
 
 ,
 
 874 F.2d 351
 
 , 356 (6th Cir. 1989). "A district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided."
 
 Bayer Healthcare
 
 ,
 
 752 F.3d at 1074
 
 (quoting
 
 Dairy Farmers of Am., Inc.
 
 ,
 
 426 F.3d at
 
 862 ). Similarly, a district court has "discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce."
 

 Id.
 

 (quoting
 
 Info-Hold, Inc. v. Sound Merch., Inc.,
 

 538 F.3d 448
 
 , 457 (6th Cir. 2008) ).
 

 Although our standard of review is abuse of discretion, this Court has cited approvingly other circuits' view that "[a] ... motion requesting time for additional discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery
 of the evidence."
 
 E.M.A. Nationwide, Inc.
 
 ,
 
 767 F.3d at
 
 623 n.7 (second alteration in original) (internal quotation marks omitted) (quoting
 
 Convertino v. U.S. Dep't of Justice
 
 ,
 
 684 F.3d 93
 
 , 99 (D.C. Cir. 2012) );
 
 see also
 
 id.
 

 ("[D]istrict courts should construe motions that invoke [ Rule 56(d) ] generously, holding parties to the rule's spirit rather than its letter." (quoting
 
 Resolution Trust Corp. v. N. Bridge Assocs.,
 

 22 F.3d 1198
 
 , 1203 (1st Cir. 1994) ).
 

 This Court has made clear that in reviewing a district court's ruling on a motion for further discovery, there are five factors to consider:
 

 (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.
 

 CenTra, Inc. v. Estrin
 
 ,
 
 538 F.3d 402
 
 , 420 (6th Cir. 2008) (quoting
 
 Plott v. Gen. Motors Corp.
 
 ,
 
 71 F.3d 1190
 
 , 1196-97 (6th Cir. 1995) ).
 

 As an initial matter, it does not appear that the district court considered all five of the
 
 Plott
 
 factors, as it never acknowledged them. In deciding Defendant's motion for summary judgment, the district court did not specifically rule on whether Plaintiffs had a sufficient opportunity to conduct discovery. Addressing Plaintiffs' motion for reconsideration, the district court rejected Plaintiffs' argument that they had an inadequate opportunity to conduct discovery, but primarily relied on the length of time discovery was open and purported deficiencies in Plaintiffs' counsel's affidavit. The district court also minimized Defendant's noncompliance with discovery requests, reasoning that the noncompliance was primarily a result of administrative burden. In its ruling on Defendant's motion to strike class allegations, the district court again rejected Plaintiffs' arguments for the same reasons, but further explained that no amount of additional discovery would allow Plaintiffs to sufficiently demonstrate commonality.
 

 We will consider each factor.
 

 1) Whether Plaintiffs Were Dilatory in Their Discovery Efforts
 

 Although this is the third factor listed in
 
 Plott
 
 , we have stated elsewhere that our "main inquiry is 'whether the moving party was diligent in pursuing discovery.' "
 
 E.M.A. Nationwide, Inc.
 
 ,
 
 767 F.3d at 623
 
 (quoting
 
 Dowling v. Cleveland Clinic Found.
 
 ,
 
 593 F.3d 472
 
 , 478 (6th Cir. 2010) ).
 
 [4]
 
 We thus examine this factor first and ask whether Plaintiffs were diligent or dilatory in their discovery efforts, a factor
 the district court did not specifically analyze.
 

 Plaintiffs filed their first set of discovery requests just a week after the scheduling order was entered. Defendant acknowledges that "Plaintiffs fully participated in the Court's status conferences." (Appellee's Br. 40.) However, Defendant argues that Plaintiffs were not diligent in pursuing discovery inasmuch as they "withdrew their Motion to Compel in September 2015, and despite the Court's invitation [in its September 8, 2015 Order], never filed a more focused and targeted motion to identify the specific, current issues regarding any discovery responses." (Appellee's Br. 39-40 (referencing R. 84, Order, Page ID# 769).)
 

 Plaintiffs respond that the motion that the court invited Plaintiffs to file "was not to compel the City to respond to discovery but rather was to be filed by Plaintiffs if needed - after discovery was produced - to address any deficiencies." (Reply Br. 6.) Plaintiffs argue that their withdrawal of their motion to compel did not affect the court's January 12, 2015 Order requiring Defendant to produce information to Plaintiffs. Indeed, the court's September 8, 2015 Order stated that a new motion to compel could be filed "should the circumstances require it." (R. 84, Order, Page ID# 769.) This order did not remove any obligations from Defendant to produce information, and Defendant in fact continued to produce information after this order. Plaintiffs argue convincingly that because Defendant was producing some documents during the year before Defendant moved for summary judgment, and because the court was overseeing this production through regular status conferences, it was reasonable for Plaintiffs not to file further motions to compel. Further, at status conferences-including one as late as December 2015-Defendant estimated that responding in full to Plaintiffs' discovery requests would take until May 2016. Plaintiffs apparently relied on Defendant's estimate and could not have known that Defendant would instead move for summary judgment in January of that year. Plaintiffs argue that they reasonably believed the discovery process would go on several months longer than it did and that they cannot be faulted for being unable to foresee that their chance to file a second motion to compel would be cut short.
 

 There is no evidence that Plaintiffs delayed discovery or were not diligent in pursuing discovery or choosing not to file a second motion to compel. The record instead indicates that Plaintiffs were diligent in pursuing discovery. Thus, this factor-which represents our "main inquiry" in this type of case-favors Plaintiffs.
 
 E.M.A. Nationwide, Inc.
 
 ,
 
 767 F.3d at 623
 
 .
 

 2) When Plaintiffs Learned of the Issue that Is the Subject of the Desired Discovery
 

 This factor primarily pertains to situations where there was something that
 prevented a party from learning about a subject of desired discovery until after some discovery had already been sought.
 
 See
 

 Woods v. McGuire
 
 ,
 
 954 F.2d 388
 
 , 391 (6th Cir. 1992) (considering an argument that a case decided late in the discovery period made more discovery necessary by changing the law applicable to the plaintiff's claim). Because the desired discovery in this case was sought in Plaintiffs' first set of discovery requests, this factor is not applicable to the facts in this case and is therefore neutral.
 

 3) Whether the Desired Discovery Would Have Changed the Ruling Below
 

 This factor favors Plaintiffs. Plaintiffs seek additional discovery relating to the individual investigative files, as well as statistics, deposition testimony, training documents, internal affairs documents, and internal correspondence. Defendant argues that because Plaintiffs received Jane Doe No. 2's investigative file and have not alleged that the file evidenced discriminatory intent, further discovery would not change the ruling. However, this was a premature conclusion.
 

 To make out their Equal Protection claim, Plaintiffs must show that it was Defendant's policy to provide less protection to victims of sexual assault than those of other violent crimes and that this was motivated by gender discrimination.
 
 Jones
 
 ,
 
 296 F.3d at 426
 
 . Just because gender animus was not present on the face of Jane Doe No. 2's investigative file does not mean that it would not be evident upon a review of other sexual assault victims' investigative files. A plaintiff can prove animus by direct or circumstantial evidence.
 
 See
 

 Washington v. Davis
 
 ,
 
 426 U.S. 229
 
 , 242,
 
 96 S.Ct. 2040
 
 ,
 
 48 L.Ed.2d 597
 
 (1976) ("Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on [a protected class]."). What appears in the spreadsheets might not faithfully reflect, or give a full picture of, the sort of investigation that sexual assault crimes received as compared with other violent crimes. Indeed, Defendant admitted that "the only way to verify [the spreadsheets'] accuracy is to review each investigative file." (R. 153-3, Responses to Interrogatories, Page ID# 9098.)
 

 As an example of how further discovery might change the outcome below, if Defendant had produced a randomly selected, representative sample of investigative files, it might be evident that much more time was spent investigating other violent crimes than was spent on sexual assault investigations-which might be seen in the level of detail included in the investigative file even though it might not appear in Defendant's spreadsheet purporting to summarize what was in the files. Further evidence of animus might also be found in emails not yet produced and if Plaintiffs were permitted to depose the officers involved in those investigations. Plaintiffs cannot be faulted for not seeking depositions earlier, as it is not unusual to await substantial completion of document production prior to conducting depositions.
 
 [5]
 

 Finally, Defendant argues that Plaintiffs' Rule 56(d) motion was properly denied because it did not "identify any specific facts relating to alleged discriminatory animus that counsel
 

 hopes
 

 to uncover." (Appellee's Br. 43.) It is true that a party cannot avoid summary judgment by filing an affidavit which does not "substantiate ... allegations of harassment with any details" and which suffers from a "lack of specificity, without any apparent justification."
 
 Emmons v. McLaughlin
 
 ,
 
 874 F.2d 351
 
 , 357 (6th Cir. 1989). In contrast with some affidavits this Court has found deficient,
 
 see, e.g.
 
 ,
 
 Cacevic v. City of Hazel Park
 
 ,
 
 226 F.3d 483
 
 , 489 (6th Cir. 2000), Plaintiffs' affidavit outlined various types of evidence that would help establish the single dispositive issue: whether Defendant's acknowledged failure to test (or timely test) thousands of SAKs was the result of discrimination on the basis of sex. Further, even assuming the affidavit lacked sufficient specificity, Plaintiffs' Rule 56(d) affidavit contains justification for its lack of details and specificity. The affidavit stated that "although the City has produced spreadsheets purportedly summarizing some [SAKs] and their status, demographic factors, and other factors, the City has not ... allowed the Plaintiffs to review and inspect source documents related to the members of the class." (R. 103-2, Affidavit, Page ID# 1089.)
 

 Without at least a representative sample of investigative files, Plaintiffs cannot be punished for being unable to make more specific allegations about what the files will prove. Because additional investigative files, as well as other discovery Plaintiffs sought but were denied, might well have changed the outcome below, this factor weighs in favor of Plaintiffs.
 

 4) How Long the Discovery Period Had Lasted
 

 The district court emphasized that "the parties conducted expensive and rigorous discovery for a significant period of time-nearly two (2) years." (R. 144, Order Denying Plaintiff's Motion to Reconsider, Page ID# 8887.) However, what constitutes a reasonable length of time for the duration of discovery is so particular to the facts and circumstances of a given case that examining what lengths of time this Court has found sufficient for discovery in the past in not particularly helpful. This Court has stated that a discovery period lasting nearly five months was "a sufficient amount of time ... to conduct
 
 some
 
 discovery" and therefore the factor did not favor either party.
 
 E.M.A. Nationwide, Inc.
 
 ,
 
 767 F.3d at
 
 625 ;
 
 see also
 

 Emmons
 
 ,
 
 874 F.2d at
 
 359 n.8 ("We do not believe that nine months before entry of summary judgment is necessarily too short a period in which to expect discovery to be completed in a [constitutional tort involving alleged police misconduct].").
 

 A discovery period of nearly two years is certainly somewhat lengthy.
 
 See
 

 Woods
 
 ,
 
 954 F.2d at 391
 
 (holding there was no abuse of discretion where district court closed discovery almost two years after tort case involving the Westfall Act was filed). However, a claim in which Plaintiffs must prove discriminatory motivation, and might seek to do so using large quantities of data demonstrating a discriminatory effect so severe as to be evidence of discriminatory motivation,
 
 see
 

 United States v. Thorpe
 
 ,
 
 471 F.3d 652
 
 , 661 (6th Cir. 2006),
 will be entitled to a longer discovery period than claims that are easier to prove.
 

 Moreover, for the reasons discussed below, the length of this delay is in large part attributable to Defendant's delays.
 

 This factor is thus largely neutral.
 

 5) Whether the Appellee Was Responsive to Discovery Requests
 

 This factor weighs in favor of Plaintiffs because Defendant was generally unresponsive to Plaintiffs' discovery requests. Defendant missed discovery deadlines, promised to complete its responses to Plaintiffs' initial discovery requests by May 2016, and then instead moved for summary judgment in January of that year. These facts, as well as the fact that Defendant continued to provide Plaintiffs with new information
 
 after
 
 filing for summary judgment, strongly suggest that Defendant may have purposefully drawn out the discovery process in order to secure summary judgment before having to respond in full to Plaintiffs' interrogatories and requests for production.
 

 Defendant missed the initial June 2014 deadline to respond to Plaintiffs' first set of discovery requests and still had not responded to these requests by August 2014. Defendant was then ordered to respond to certain interrogatories by January 31, 2015, but Defendant moved for an extension the day before its responses were due.
 

 Up until December 2015, Defendant assured Plaintiffs and the court that it would be able to complete its discovery responses by May 2016. However, in January 2016, Defendant moved for summary judgment.
 

 Plaintiffs note that Defendant produced "approximately one hundred ... pages from the investigatory files of Jane Doe No. 1 and Jane Doe No. 2 ... for the first time one (1) week
 
 after
 
 the City filed its Motions for Summary Judgment." (R. 103-2, Affidavit, Page ID# 1090.) It was also not until after Defendant had moved for summary judgment that it produced three of the five years of spreadsheet information. Thus, a major portion of what Defendant produced in response to Plaintiffs' discovery requests was not turned over until
 
 after
 
 it had filed for summary judgment.
 

 Although Defendant claims that it spent over $1 million in producing the spreadsheets, it is odd that Defendant would expend such a large amount of money producing spreadsheets, rather than either offering Plaintiffs a representative sample of investigative files that Plaintiffs would bear the cost of reviewing or otherwise negotiating with Plaintiffs about a less costly way to satisfy Plaintiffs' discovery requests. Defendant's expenses were ostensibly for the purpose of answering Interrogatory Nos. 3 through 6; however, the record does not indicate that Defendant ever attempted to respond to Request for Production Nos. 18 through 21, other than with the spreadsheets. It does not appear from the record why Defendant seemed to believe the source material for its responses to Interrogatory Nos. 3 through 6 (namely, the investigative files) would not be subject to Request for Production Nos. 18 through 21. Defendant offered as excuses for its delay in producing the spreadsheets the fact that the case was data-heavy and providing the information involved reviewing both paper and electronic documents, which were stored on different electronic systems because the systems had been updated over time. However, Defendant offered no valid excuse for its failure to produce the documents Plaintiffs requested; indeed, allowing Plaintiffs to review a representative random sample of some of the investigative files could have significantly
 
 reduced
 
 Defendant's time and effort.
 

 Defendant's delay in producing discovery suggests that it could have been hoping to obtain summary judgment before having to comply in full with Plaintiffs' discovery requests. Defendant's repeated assurances that it would comply by May 2016 before it moved for summary judgment in January 2016 further suggests the possibility of a strategic delay motivated by a desire to deprive Plaintiffs of a full opportunity for discovery.
 

 In any event, Defendant was not responsive to Plaintiffs' discovery requests, and this factor weighs for Plaintiffs.
 

 In sum, Plaintiffs were moderately diligent in pursuing discovery, although somewhat blameworthy in relying on Defendant's representations that discovery would be forthcoming. Defendant, on the other hand, was even more blameworthy than Plaintiffs due to its unreasonable delays in producing the discovery material. And it is evident that additional discovery might have changed the outcome below. Together, this suffices to convince this Court that Plaintiffs did not receive " 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment."
 
 Ball v. Union Carbide Corp.
 
 ,
 
 385 F.3d 713
 
 , 719 (6th Cir. 2004) (quoting
 
 Anderson v. Liberty Lobby, Inc.
 
 ,
 
 477 U.S. 242
 
 , 257,
 
 106 S.Ct. 2505
 
 ,
 
 91 L.Ed.2d 202
 
 (1986) ). It is true that discovery has lasted an extended time and cost Defendant some amount of money; however, as the above analysis illustrates, it is unclear why much of this time and cost was not avoided, and expenditures of time and money alone do not justify terminating discovery where a plaintiff has been diligent and may still discover information that could establish a genuine issue of material fact.
 

 Therefore, this Court finds that the district court abused its discretion in granting Defendant summary judgment and striking Plaintiffs' class allegations before there was a full opportunity to conduct discovery. We remand with instructions that the district court allow discovery to proceed. We note that, rather than requiring a complete production of all of the source files, it may be more appropriate to allow Defendant to produce a sufficient representative sampling of the investigative files or permit Plaintiffs to review a representative sampling of these files. After that, the district court should allow additional discovery as necessary in further proceedings consistent with this opinion.
 

 b. Class Certification Claim
 

 Because of our conclusion that additional discovery might establish a genuine issue of material fact as to sex discrimination against Jane Doe No. 2 by showing that Defendant had a pattern or practice of not taking sexual assault crimes as seriously as other violent crimes, we also hold that additional discovery might also allow Plaintiffs to identify and certify a class.
 

 As discussed above, the investigative files might reveal evidence of gender-motivated discrimination. If so, this evidence could allow Plaintiffs to find further class representatives and could ultimately result in certification of a class.
 

 To certify a class, a party must demonstrate that four prerequisites are met:
 

 (1) the class is so numerous that joinder of all members is impracticable;
 

 (2) there are questions of law or fact common to the class;
 

 (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
 

 (4) the representative parties will fairly and adequately protect the interests of the class.
 

 Fed. R. Civ. P. 23(a). Rule 23(b) places an additional requirement on putative class
 representatives that is inapplicable to this appeal.
 

 The district court struck the class allegations because "discovery thus far does not, and additional discovery would not, allow Plaintiffs to sufficiently demonstrate [the] commonality" requirement of Rule 23(a)(2). (R. 145, Order Granting Defendant's Motion to Strike Class Allegations, Page ID# 8911.) The district court summarized that "given the discretion of different investigators, the discretion in varying supervisor chains, and the multitude of reasons for not testing or timely testing a SAK, Plaintiffs cannot show a common mode of exercising discretion in this case." (R. 145, Page ID# 8918-19.)
 

 In support of its holding, the district court cited
 
 Pilgrim v. Universal Health Card, LLC
 
 , in which this Court affirmed a district court's order striking class allegations due to the class's inability to meet the predominance requirement of Rule 23(b).
 
 660 F.3d 943
 
 , 946 (6th Cir. 2011). In rejecting the plaintiffs' request for further discovery on the certification issue, this Court noted, "Their claims are governed by different States' laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification."
 

 Id.
 

 at 949
 
 . The instant case is distinguishable from
 
 Pilgrim
 
 , however, in that there is no choice of law issue, nor any other sort of "prototypical factual issue that will vary from place to place and from region to region" that the
 
 Pilgrim
 
 Court emphasized.
 

 Id.
 

 at 948
 
 . The district court noted the discretion individual investigators have in deciding whether to submit a SAK for testing and compared this with the Supreme Court's statement in
 
 Wal-Mart Stores, Inc. v. Dukes
 
 that absent the plaintiffs establishing a "common mode of exercising discretion that pervades the entire company," the commonality requirement of Rule 23(a) could not be met.
 
 564 U.S. 338
 
 , 356,
 
 131 S.Ct. 2541
 
 ,
 
 180 L.Ed.2d 374
 
 (2011). This is true, and the similarities to the instant case are evident; however, the key distinction is that in
 
 Wal-Mart Stores, Inc.
 
 , it was the plaintiffs who moved for class certification, and the motion was filed
 
 after
 
 they had an opportunity for meaningful discovery.
 

 Id.
 

 at 346
 
 ,
 
 131 S.Ct. 2541
 
 . By contrast, in this case it was Defendant who moved to strike class allegations, and the motion was filed before Plaintiffs had an opportunity for meaningful discovery-making
 
 Wal-Mart Stores, Inc.
 
 inapposite. Based on the record before us, Plaintiffs may be unable to satisfy the commonality requirement; however, on remand further discovery could provide Plaintiffs with evidence of commonality and could result in certification of a class.
 

 The district court prematurely concluded that no amount of discovery could possibly demonstrate commonality in this case. The above quote from
 
 Wal-Mart Stores, Inc.
 
 implies as much, as the Court suggests that a "common mode of exercising discretion that pervades the entire company" would suffice to prove commonality. Indeed, Plaintiffs' theory of the case largely turns on whether there was a pattern or practice of taking sexual assault crimes less seriously than other violent crimes. In reviewing the investigative files and additional evidence, Plaintiffs on remand will be free to pursue their class allegations, as the additional discovery might satisfy the commonality requirement of Rule 23(a)(2).
 

 CONCLUSION
 

 For the reasons set forth above, we
 
 REVERSE
 
 the district court's grant of Defendant's motion for summary judgment as to Jane Doe No. 2 and motion to strike class allegations, and
 
 REMAND
 
 for further
 proceedings consistent with this opinion.
 

 DISSENT
 

 Plaintiffs purported to appeal the district court's denial of Plaintiffs' motion for reconsideration, but Plaintiffs failed to develop arguments on appeal sufficient to preserve these claims.
 
 United States v. Johnson
 
 ,
 
 440 F.3d 832
 
 , 845-46 (6th Cir. 2006) ("[A]n appellant abandons all issues not raised and argued in its initial brief on appeal." (alteration in original) (quoting
 
 United States v. Still
 
 ,
 
 102 F.3d 118
 
 , 122 n.7 (5th Cir. 1996) )).
 

 On February 2, 2015, Plaintiffs filed an unopposed motion to stay discovery pending the resolution of an issue relating to Plaintiffs' counsel's potential disqualification from representing Plaintiffs in the case. The district court stayed discovery on March 11, 2015. On April 8, 2015, the issue was resolved when the district court held that Plaintiffs' counsel was not disqualified from the case, and the stay was lifted.
 

 This rule was known as Rule 56(f) until it was renumbered as 56(d) in 2010.
 
 Block v. Meharry Med. Coll.
 
 ,
 
 723 F. App'x 273
 
 , 284 n.4 (6th Cir. 2018).
 

 The dissent asserts that we misread this quote because "diligence in pursuing discovery is a term of art." (Dissent at 23.) The dissent admits its reading is counterintuitive, since "[i]n common parlance" being diligent and not being dilatory are equivalent, (Dissent at 23), and we note that this is generally true in legal parlance as well.
 
 See Diligence
 
 , Black's Law Dictionary (11th ed. 2019) ("Steady application to one's business or duty; persevering effort to accomplish something undertaken."). Further, any ambiguity in the meaning of "diligence" is put to rest by a closer reading of
 
 E.M.A. Nationwide, Inc.
 
 Following the quote in that case about our "main inquiry" being diligence, there is a footnote in which we quote language from other circuits emphasizing that the most important consideration in these cases is whether the moving party acted "diligently," as opposed to "lackadaisically."
 
 767 F.3d at
 
 623 n.7 (quoting
 
 Convertino v. U.S. Dep't of Justice,
 

 684 F.3d 93
 
 , 99 (D.C. Cir. 2012) and
 
 Resolution Trust Corp. v. N. Bridge Assocs.,
 

 22 F.3d 1198
 
 , 1203 (1st Cir. 1994) ). The implied assertion that "diligently" pursuing discovery is the opposite of "lackadaisically" doing so is strong evidence that these terms carry their standard definitions, as opposed to the unnatural one proposed by the dissent (unless the dissent is prepared to argue that "lackadaisical" is also a term of art).
 

 In support of its argument, the dissent cites this Court's statement that our "overarching inquiry in these [
 
 Plott
 
 ] factors is whether the moving party was diligent in pursuing discovery."
 
 Dowling
 
 ,
 
 593 F.3d at 478
 
 . But this quote in fact supports our conclusion. To the extent other
 
 Plott
 
 factors (
 
 e.g.
 
 , when the moving party learned of the issue that is the subject of the desired discovery) may bear on whether the moving party was diligent, those factors too will relate to our "main" or "overarching inquiry."
 
 See
 

 Scadden v. Werner
 
 ,
 
 677 F. App'x 996
 
 , 1000 (6th Cir. 2017) ("In [ ] reviewing [a district court's decision on a Rule 56(d) motion], we look to various factors but consider primarily whether the party seeking an extension was 'diligent in pursuing discovery.' " (quoting
 
 E.M.A. Nationwide,
 

 Inc.
 
 ,
 
 767 F.3d at
 
 623 )). Nevertheless, because one factor squarely asks whether the moving party was dilatory in pursuing discovery, that factor is the most important to our inquiry.
 

 The dissent criticizes us for "vaguely referencing the possibility that the depositions and emails could show animus." (Dissent at 26.) However, because discriminatory animus is very difficult to prove, "[a] trial court must be cautious about granting summary judgment to an [defendant] when, as here, its intent is at issue. Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an [entity]'s corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination."
 
 Gallo v. Prudential Residential Servs., Ltd. P'ship
 
 ,
 
 22 F.3d 1219
 
 , 1224 (2d Cir. 1994). The dissent does not fairly consider the inherent difficulty in proving claims like these and is overly cavalier in dismissing the likelihood that circumstantial proof from statistics, depositions, emails, and other sources could permit Plaintiffs to survive a summary judgment motion in a case where Defendant admits that it possessed but failed to submit for testing many thousands of sexual assault kits.