**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0091n.06

**No. 19-3375**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

PAUL CLINE; JEANINE CLINE, )
)
   Plaintiffs-Appellants, )
)
        v. )
)
DART TRANSIT COMPANY; SUSAN PRIEST )
RICHLAK, Administrator of the Estate of Richard )
M. Thompson, Jr., deceased, )
)
   Defendants-Appellees. )

**FILED**
Feb 07, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE: GRIFFIN, STRANCH, and DONALD, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiffs, Paul and Jeanine Cline, brought this action against the estate and employer of Richard M. Thompson, Jr., a commercial truck driver, who had a fatal heart attack while driving and collided with Mr. Cline. We resolve two issues in this appeal: (1) whether the federal district court possessed subject-matter jurisdiction to adjudicate this case and (2) whether the federal district court abused its discretion when it denied plaintiffs' Federal Rule of Civil Procedure 56(d) motion for discovery. For the reasons stated below, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

I.

Richard Thompson was an independent contractor who drove commercial vehicles under Defendant Dart Transit Company's ("Dart") authority. In August 2016, Thompson suffered a

medical episode that was reported to Dart as a heart attack. Dart placed Thompson on a "safety hold" for several weeks while he recovered.

Before Dart would permit Thompson to resume driving under its authority, it required him to obtain a certification that he was physically qualified to drive by a medical examiner of his choosing who was registered with the Department of Transportation ("DOT"). On October 4, 2016, Thompson visited a DOT-registered medical examiner. On the patient medical history form, Thompson disclosed to the medical examiner that he had suffered a heart attack. After the examination, the medical examiner certified Thompson to drive commercial vehicles for one year.

On December 21, 2016, Thompson was driving a commercial motor vehicle. While driving, he had a heart attack, which caused his vehicle to collide with the vehicle Paul Cline was driving. Paul Cline and his wife Jeanine filed this lawsuit against Thompson's estate and Dart.

At the case management conference, the district court limited the discovery period to ninety days[1] and allowed plaintiffs to take only one deposition.[2] Plaintiffs deposed Randy Luckow, Dart's corporate representative, on August 7, 2018. On August 23, 2018, plaintiffs moved to extend and expand discovery. That was just one day before the discovery cutoff. On September 6, 2018, defendants moved for summary judgment. Plaintiffs filed an opposition and a Rule 56(d) motion to (1) defer or deny defendants' summary judgment motion and (2) permit additional discovery. The district court granted summary judgment in favor of defendants. In the very next docket entry, the district court denied plaintiffs' motion to extend and expand discovery and their

---

[1]The Case Management Plan set August 24, 2018, as the last date for discovery.

[2]Although the district court limited plaintiffs to only one deposition, the district court did give plaintiffs the option to ask for permission to take additional depositions.

Rule 56(d) discovery motion as moot because of its summary judgment decision. Plaintiffs timely appealed.

## II.

The first issue on appeal is whether the district court possessed subject-matter jurisdiction to adjudicate this case. It did.

Plaintiffs argue that the district court lacked subject-matter jurisdiction because there is not complete diversity between plaintiffs and defendants. Specifically, plaintiffs and defendant Thompson Estate are both citizens of Ohio.[3] Defendants do not dispute the citizenship of any of the parties. Rather, defendants argue that plaintiffs fraudulently joined the Estate in an attempt to defeat diversity jurisdiction. "[F]raudulent joinder of non-diverse defendants will not defeat removal on diversity grounds."[4] *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citation omitted). "Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Id.* at 624. Therefore, the question for the court is whether plaintiffs have a colorable cause of action against the Estate.

## A.

According to Ohio law, "[e]xcept as provided in section 2117.061 of the Revised Code, all claims shall be presented within six months after the death of the decedent." Ohio Rev. Code § 2117.06(B). Plaintiffs do not dispute that point. Additionally, plaintiffs do not contend that they

---

[3]Plaintiffs concede that defendant Dart is a citizen of a different state.

[4]Though our caselaw includes a derivative of the word "fraud" in the phrase "fraudulent joinder," we do not believe that plaintiffs made a "knowing misrepresentation or knowing concealment of a material fact . . . to induce another to act to his or her detriment." *Fraud*, *Black's Law Dictionary* (11th ed. 2019).

presented their claims within the six-month window. Rather, plaintiffs argue that a two-year claim presentment window applies and that they filed their claims within that window.

## B.

Plaintiffs' contention that a two-year claim presentment window applies depends on multiple sources of legal authority working together. First, § 2117.06(G) of Ohio law states that

> [n]othing in . . . section [2117.06] or in section 2117.07 of the Revised Code shall be construed to reduce the periods of limitation or periods prior to repose in section 2125.02 or Chapter 2305[ ] of the Revised Code, provided that no portion of any recovery on a claim brought pursuant to that section or any section in that chapter shall come from the assets of an estate unless the claim has been presented against the estate in accordance with Chapter 2117[ ] of the Revised Code.

Ohio Rev. Code § 2117.06(G). That provision indicates that if certain criteria are satisfied, longer limitation periods apply instead of § 2117.06(B)'s six-month window. In the case at bar, the critical questions are whether plaintiffs brought a claim pursuant to Chapter 2305 and whether "no portion" of recovery plaintiffs sought pursuant to that chapter "c[a]me from the assets of an estate."

Second, according to § 2305.10(A), "[e]xcept as provided in division (C) or (E) of this section, an action . . . for bodily injury . . . shall be brought within two years after the cause of action accrues." Ohio Rev. Code § 2305.10(A). Third, the Ohio Supreme Court, in *Meinberg v. Glaser*, held that an insurance policy that covers a decedent is not a part of "the assets of an estate." 237 N.E.2d 605, 609 (Ohio 1968). Specifically, the *Meinberg* court explained the following:

> [W]here it is alleged in an action for bodily injuries and property damage that such injuries and damage were proximately caused by the negligence of a decedent and that he had a policy insuring him against liability for such negligence and it does not appear that any other claims covered by such insurance have been asserted, such action may be brought against the executor or administrator of such decedent at any time within two years after the cause thereof arose without presenting a claim against the estate within the . . . time specified in Section 2117.06 . . . .

*Id.* at 609.  Plaintiffs contend that there is an insurance policy in the case at bar that satisfies *Meinberg* because (1) "Dart . . . is required to maintain a minimum level of financial responsibility" and (2) Dart self-insures to satisfy that requirement.

The jurisdiction issue, therefore, reduces to whether plaintiffs "*allege[d] and prove[d]* that there is something other than an asset of the estate, such as liability insurance, against which any judgment rendered in [their] favor may be enforced." *Id.* at 609–10 (emphasis added and footnote omitted).

C.

Plaintiffs have not complied with *Meinberg*'s command to "prove that there is something other than an asset of the estate, such as liability insurance, against which any judgment rendered in [their] favor may be enforced." *Id.* (footnote omitted).  In plaintiffs' briefing, they merely contend that a non-estate asset must exist because Dart is legally obligated to maintain a minimum level of financial responsibility.  The fact that Dart has a legal requirement to have a particular asset, however, is not evidence that Dart actually has the asset.[5]  Moreover, plaintiffs have not directed us to any evidence in the record that proves the supposed non-estate asset exists.[6]  Without that proof, plaintiffs lack a colorable cause of action against the Estate.  And without a colorable

---

[5]During oral argument, plaintiffs conceded that they had not proved that the non-estate asset—Dart's financial responsibility—existed.  Although plaintiffs asserted at oral argument that Dart provided documents alleging that it had complied with its legal obligation to be financially responsible, plaintiffs have not directed us to where those documents appear in the record.

[6]A party has an obligation to direct us to parts of the record that support her contentions. *See* Fed. R. App. P. 28(a)(8)(A) ("The appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . .").

cause of action, fraudulent joinder occurred.  Therefore, there was complete diversity between the plaintiffs and defendants, and the district court possessed subject-matter jurisdiction.

### III.

The second issue on appeal is whether the district court abused its discretion when it denied plaintiffs' Rule 56(d) motion for discovery. We conclude that it did.

### A.

We review "a district court's decision on a Rule 56(d) motion for discovery for an 'abuse of discretion.'" *Doe v. City of Memphis*, 928 F.3d 481, 486 (6th Cir. 2019) (citation omitted).[7]  "To reverse, [we] must find that the district court's 'ruling was arbitrary, unjustifiable, or clearly unreasonable.'" *Id.* (citation omitted).

Rule 56(d) gives litigants a chance to secure "'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Id.* at 490 (citation omitted).  A party invoking Rule 56(d) "must do so in good faith by affirmatively demonstrating . . . how postponement of a ruling on the [summary judgment] motion will enable him . . . to rebut the movant's showing of the absence of a genuine issue of fact." *Id.* (citation omitted and omissions in original).  To determine whether a district court abused its discretion in this context, we consider the following factors:

> (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

---

[7]We also review non-Rule 56(d) district court decisions that limit discovery for abuse of discretion. *Bd. of Trustees v. Moore*, 800 F.3d 214, 223 (6th Cir. 2015).

*Id.* at 491 (citation omitted). These are known as the "*Plott* Factors."[8]

B.

In plaintiffs' Rule 56(d) motion, they asked the district court to deny or defer consideration of defendants' summary judgment motion and for permission to do the following:

(1) "conduct discovery to learn what physicians Mr. Thompson treated with for five years prior to the crash at issue";

(2) "seek releases to obtain Mr. Thompson's medical records from [the] physicians [who treated Thompson for the five years before the crash at issue]";

(3) "depose [the] physicians who provided treatment relevant to Mr. Thompson's heart issues";

(4) "discover Mr. Thompson's medical records with the [Department of Transportation-registered] medical examiner" who certified Thompson as fit to drive again;

(5) depose the Department of Transportation-registered medical examiner who certified Thompson as fit to drive again;

(6) "depose D. Goddard [of Dart] to learn what was discussed" in conversations he had with and voicemails he left for Thompson;[9]

(7) "depose . . . [Dart's] corporate representative most knowledgeable of the relationship between Dart and Highway Sales, Inc."; and

(8) take "any further depositions [plaintiffs] believe necessary after conducting the previously discussed discovery, up to the ten depositions permitted without leave of Court under Fed. R. Civ. P. 30 and 31."

---

[8]The factors have that name because we articulated them in *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995). We also use the *Plott* factors when we review district court decisions that resolved non-Rule 56(d) discovery motions. *See, e.g.*, *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014); *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478–80 (6th Cir. 2010).

[9]Plaintiffs believed that documents Dart had produced during discovery "suggested that D. Goddard received information and documents regarding Mr. Thompson's heart attack." Additionally, plaintiffs asserted that "the persistence in D. Goddard's messages regarding . . . [Thompson's] truck lease raises questions about the nature of Dart's relationship with Mr. Thompson and Highway Sales, Inc. and whether Dart (or any other person or entity) was pressuring Mr. Thompson to minimize his health issues once his disability policy ran out, so that he could return to driving and keep making his lease payments."

C.

1.

The fourth *Plott* Factor is whether plaintiffs were dilatory in their discovery efforts. *Doe*, 928 F.3d at 491. Although this is the fourth *Plott* Factor, we examine it first because our "main inquiry is 'whether the moving party was diligent in pursuing discovery.'" *Id.* (citation omitted). To perform this inquiry, we "ask whether [p]laintiffs were diligent or dilatory in their discovery efforts." *Id.*

Plaintiffs sent their first set of discovery requests when they filed their complaint in state court (i.e., before Dart removed the case to federal court). Plaintiffs could not have sent those requests any sooner. On June 14, 2018, approximately twenty days in to the ninety-day discovery period, Dart responded to plaintiffs' first set of discovery requests. That same day, Dart proposed dates for the deposition of its corporate representative. According to Dart, plaintiffs did not reply for over six weeks and their reply came in the form of their July 27, 2018 notice to take the deposition of Dart's corporate representative, Randy Luckow. The deposition occurred less than two weeks later on August 7, 2018. Dart argues that plaintiffs' response time of over six weeks was dilatory conduct. But this contention is incorrect. According to Dart, its corporate representative was not available until toward the end of the discovery period—August 1–3, 2018. Therefore, the deposition's occurrence in the later part of the discovery period was not the result of plaintiffs being dilatory.

On August 23, 2018, plaintiffs filed their Motion to Extend and Expand Discovery. Discovery was set to close the very next day. Dart contends that filing a discovery motion the day before the discovery deadline amounts to dilatory conduct. Again, Dart's contention is incorrect. In plaintiffs' motion, they sought permission to conduct discovery based on information obtained

only about two weeks earlier during the deposition of Dart's corporate representative. As discussed above, Dart—not plaintiffs—caused that deposition to occur towards the end of the discovery period. Plaintiffs also sought permission to take discovery from the Estate. During the May 24, 2018 Case Management Conference, the district court—on the record—suggested that it might be unethical for the Estate to field discovery requests while its administrator was being paid for by plaintiffs and while the Estate lacked legal representation. On August 22, 2018, the Estate obtained legal representation. Plaintiffs filed their Motion to Extend and Expand Discovery the very next day. That means that plaintiffs acted almost immediately once the concern the district court raised was removed. Additionally, defendants filed their motion for summary judgment on September 6, 2018. On October 5, 2018, plaintiffs filed a timely opposition and, contemporaneously, a Rule 56(d) motion for additional discovery.[10]

Plaintiffs sought permission to (1) "conduct discovery to learn what physicians Mr. Thompson treated with for five years prior to the crash at issue," (2) "seek releases to obtain Mr. Thompson's medical records from [the] physicians [who treated Thompson for the five years before the crash at issue]," and (3) "depose [the] physicians who provided treatment relevant to Mr. Thompson's heart issues." Those discovery avenues relate to taking discovery from the Estate,[11] but plaintiffs had understood the district court to indicate—on the record—that it would have been unethical for plaintiffs to take discovery from the Estate while it was unrepresented. The Estate had only just recently obtained counsel at the end of the discovery period, and plaintiffs

---

[10]When plaintiffs filed their Rule 56(d) motion, the district court had still not ruled on their August 23, 2018 Motion to Extend and Expand Discovery.

[11]Even deposing Thompson's doctors would have likely involved taking discovery from the Estate because plaintiffs would have probably had to use discovery mechanisms to obtain the doctors' names and contact information.

were waiting for the district court to rule on their August 23, 2018 Motion to Extend and Expand Discovery. Therefore, it was not dilatory to seek permission—through a Rule 56(d) motion—to conduct that discovery.

In their Rule 56(d) motion, plaintiffs also sought permission to (1) "depose D. Goddard [of Dart] to learn what was discussed" in conversations he had with and voicemails he left for Thompson and (2) "depose . . . [Dart's] corporate representative most knowledgeable of the relationship between Dart and Highway Sales, Inc." Plaintiffs did not learn about Goddard until Dart submitted its response to plaintiffs' third set of requests for the production of documents on September 7, 2018. That was after plaintiffs filed their August 23, 2018 Motion to Extend and Expand Discovery and after the close of discovery. Moreover, plaintiffs did not learn about Highway Sales, Inc. until the deposition of Dart's corporate representative, which occurred towards the end of the discovery period. Therefore, plaintiffs were not dilatory when they sought permission to seek the discovery described above.

Though plaintiffs largely were not dilatory in their discovery efforts, they were not perfect. In plaintiffs' Rule 56(d) motion, they sought permission to depose the Department of Transportation-registered medical examiner who certified Thompson as fit to resume driving after his August 2016 heart attack and obtain Thompson-related medical records the medical examiner possessed. Plaintiffs' perceived obstacle to taking discovery from the Estate—the ethical concerns raised by the district court—did not apply to the DOT-registered medical examiner. Plaintiffs have not explained why they waited to seek permission to explore those avenues of discovery.

But because the standard is not perfection and because nearly all of plaintiffs' discovery efforts were not dilatory, this *Plott* Factor weighs in plaintiffs' favor.

2.

The first *Plott* Factor is "when the appellant learned of the issue that is the subject of the desired discovery." *Doe*, 928 F.3d at 491 (citation omitted). "This factor primarily pertains to situations where there was something that prevented a party from learning about a subject of desired discovery until after some discovery had already been sought." *Id.* at 492–93. On the one hand, plaintiffs did not learn about Thompson's fleet manager/dispatcher or D. Goddard (a person in Dart's database) until they had taken some discovery from Dart, specifically the deposition of the company's corporate representative. On the other hand, some topics that were the subject of the desired discovery—such as Thompson's doctors and Thompson's medical records—were well known to plaintiffs without discovery. On balance, this *Plott* Factor is neutral.

3.

The second *Plott* Factor is "whether the desired discovery would have changed the ruling below." *Id.* at 491 (citation omitted). Defendants assert that they are not liable because of Ohio's sudden medical emergency affirmative defense. Under that defense, when "the driver of an automobile is suddenly stricken by a period of unconsciousness which he has no reason to anticipate and which renders it impossible for him to control the car he is driving, he is not chargeable with negligence as to such lack of control." *Roman v. Estate of Gobbo*, 791 N.E.2d 422, 432 (Ohio 2003). The only part of the defense the parties diverge on is the foreseeability element—whether defendants had no reason to anticipate Thompson's sudden period of unconsciousness (i.e., his fatal heart attack). Defendants contend that Thompson's fatal heart attack was not foreseeable because—just a few months earlier—he had been medically cleared to drive by a physician registered with the Department of Transportation. Plaintiffs contend defendants did not satisfy their burden to prove that Thompson's fatal heart attack was not

foreseeable. Plaintiffs advance at least two lines of attack on foreseeability that are relevant for this *Plott* Factor.

First, plaintiffs contend that if Thompson's DOT driving certification was invalid, defendants' foreseeability argument would collapse. Plaintiffs argue that the certification would have been invalid if Thompson did not provide all relevant information to the certifying doctor. To investigate the validity of the certification, plaintiffs asked the district court for leave to depose the certifying doctor and discover the medical records related to Thompson that the certifying doctor possessed. If the district court had permitted that discovery, and if the discovery had indicated that Thompson's certification had been invalid, Defendants would have lost the core of their argument for their contention that Thompson's fatal heart attack was not foreseeable. This discovery, therefore, might well have changed the result below.

Second, plaintiffs suspect that Thompson had a heart attack after he was certified to start driving again, but before the fatal heart attack. They had that suspicion because of information in the coroner's report, including the statement that Thompson suffered a "[t]ransmural myocardial infarction (approximately 3+ weeks)" before his fatal heart attack. If Thompson had a heart attack after being certified to return to driving but before his lethal heart attack, plaintiffs contend that Dart would not have been able to rely on Thompson's certification as a reason the fatal heart attack was not foreseeable. Because the crux of Dart's unforeseeability argument was Thompson's certification to return to driving and, implicitly, the absence of an intervening heart attack, discovery on this subject might well have changed the result below. Thus, this *Plott* factor weighs in plaintiffs' favor.

4.

The third *Plott* Factor is the length of the discovery period. *Doe*, 928 F.3d at 491. The district court gave the parties ninety days to complete discovery. Even though the district court limited discovery to liability, three months was a meager amount of time for the parties to complete paper discovery and depositions in this factually complex case.[12] This *Plott* Factor, therefore, weighs in plaintiffs' favor.

5.

The fifth *Plott* Factor is "whether the appellee was responsive to discovery requests." *Id.* at 491 (citation omitted). Plaintiffs have not identified any discovery deadlines that defendants missed. Plaintiffs, however, assert that defendants' responses to their first set of requests for the production of documents lacked information stored in Dart's database. But plaintiffs concede that Dart produced some information from the database in response to their third set of requests for document production. Without more unresponsiveness from defendants, this factor does not weigh in plaintiffs' favor.

In sum, plaintiffs pursued discovery diligently within the overly restrictive confines the district court put in place. Additionally, "it is evident that additional discovery might have changed the outcome below." *Id.* at 496. Given the *Plott* Factors that weigh in plaintiffs' favor, plaintiffs did not have "'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Id.* (citation omitted). Granting summary judgement in defendants' favor and denying plaintiffs' Rule 56(d) motion before there was a full opportunity to conduct discovery

---

[12]We have stated that a discovery period of "nearly five months . . . was a sufficient amount of time for Defendants to conduct *some* discovery" but the discovery period in the case at bar was about two months shorter. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 625 (6th Cir. 2014).

was clearly unreasonable and an abuse of discretion. On remand, the district court should allow a full opportunity to conduct discovery.

D.

Plaintiffs have also requested that the case be reassigned to a different district judge, arguing that the court has expressed its conclusion that the claim is meritless or even improper. Under 28 U.S.C. § 2106, we have the authority to reassign a case to a different district court judge on remand. But we may only order a reassignment if it is necessary. *Rorrer v. City of Stow*, 743 F.3d 1025, 1049 (6th Cir. 2014). To decide whether reassignment is necessary, we consider the following factors:

> (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*United States ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 532–33 (6th Cir. 2012) (citation omitted).

Some of the district court's statements give the impression that it has already decided the outcome of this case, which might lead to the appearance of partiality. But significant work has already gone into the case. "Reassignment is '[a]n extraordinary power,' which we hesitate to invoke." *Howe v. City of Akron*, 801 F.3d 718, 756 (6th Cir. 2015) (citation omitted). We believe that, consistent with the directions in this opinion, the lower court will not rely on any preconceived notion it had of the merits of this case, will allow the parties to proceed with discovery in a reasonable fashion, and will consider any new evidence fairly and impartially. Therefore, at this point, reassignment is not necessary and we deny plaintiffs' request for it.

IV.

For these reasons, we REVERSE the district court's judgment and REMAND for further proceedings consistent with this opinion.